725 So.2d 241 (1998)
In the Interest of V.R.
G.R and B.J.R.
v.
Department of Human Services for the State of Mississippi.
No. 97-CA-00915-SCT
Supreme Court of Mississippi.
December 17, 1998.
*242 Leslie Gates, Meridian, Attorney for Appellants.
Office of the Attorney General by Pat Flynn, Attorney for Appellee.
BEFORE SULLIVAN, P.J., MILLS AND WALLER, JJ.
MILLS, Justice, for the Court:

STATEMENT OF THE CASE
¶ 1. G.R., the father and B.J.R., the mother of V.R., their minor daughter appeal a Lauderdale County Youth Court order initiating termination of parental rights proceedings. They assert the following issues:
I. WHETHER IT IS A VIOLATION OF CONSTITUTIONAL SEPARATION OF POWERS AND DUE PROCESS FOR THE JUDICIAL BRANCH TO DIRECT THE DHS TO INITIATE TPR PROCEEDINGS WITHOUT PRIOR APPLICATION FOR SUCH BY THE DHS AND WITHOUT PRIOR NOTICE TO THE PARENTS.
II. WHETHER PROBABLE CAUSE EXISTED TO BELIEVE THERE WERE GROUNDS FOR TERMINATION.

STATEMENT OF THE FACTS
¶ 2. On February 18, 1994, V.R. the minor child was removed by the Lauderdale County Department of Human Services (DHS) from the home of her parents, G.R. and B.J.R. The DHS affidavit for custody alleged that V.R. was not receiving "proper care, supervision, attention, shelter, clothing, nourishment, medical attention and a stable environment." On March 8, 1994, a summons was issued ordering the parents to appear at a neglect/abuse hearing on March 10, 1994. A guardian ad litem was appointed for V.R. After the hearing, a consent judgment was entered which continued DHS' custody and granted G.R. and B.J.R. visitation rights. The parents agreed to submit to the jurisdiction of the court without an adjudication of neglect or abuse and to cooperate in any treatment programs or counseling in the best interest of the child and the parents.[1]
¶ 3. At an August 16, 1994 review hearing the youth court noted that neither parent had entered into a service agreement with *243 the DHS, the parents continued to exhibit an unstable home environment and the parents had failed to attend any parenting classes or family counseling. The parents were ordered to enter into a service agreement with the DHS within thirty days or their visitation privileges would cease.
¶ 4. On October 6, 1994, an order was issued granting continued custody to DHS and limiting parental visitation to the discretion of DHS. An additional order continuing DHS' custody was entered on March 9, 1995.
¶ 5. V.R. was returned to her parents on June 8, 1995. On August 4, 1995, two months later, DHS filed another affidavit for custody, alleging V.R.'s parents provided improper care and an unstable environment. Again, custody was granted to DHS and a guardian ad litem was appointed. A neglect and abuse hearing was set for August 31, 1995.
¶ 6. At the August hearing, the youth court judge found V.R. was a victim of neglect. The court placed V.R. in the custody of DHS, set up supervised visitation with DHS, and ordered the parents to obtain psychological evaluations for the court to review. The review hearing was set for October 31, 1995 but was thereafter continued until November 9, 1995. V.R.'s parents did not attend the hearing. In its order following the review hearing, the court found: 1) the parents had not complied with prior orders of the court or the service agreement, 2) the parents had indicated a desire to relinquish parental rights which they withdrew before each review, 3) the parents appeared to be unable to provide permanency and stability which V.R. needed, 4) the parents failed on two occasions to appear for court-ordered psychological evaluations and 5) a termination of parental rights (TPR) should be pursued in the best interest of the child. The court discontinued the visitation rights of the parents at that time.
¶ 7. On December 14, 1995, the parents filed a motion to re-schedule their psychological evaluation and suspend the initiation of TPR proceedings. In their motion, the parents stated they did not attend the November 9 hearing because they were not aware that the court would be considering the initiation of TPR proceedings. The parents were directed by the court to make appointments with Dr. Jan Boggs, Ph.D. for additional psychological examinations, and DHS was ordered to hold in abeyance the directive to institute TPR proceedings. On January 31, 1996 the judge amended the order upon the parents' request and the court directed the parents to have additional evaluations performed by Weems Community Health Center. A hearing was set for April 25, 1996 to review the results of the evaluations.
¶ 8. On April 4, 1996, the parents filed an objection to the appointment with Dr. Boggs due to Dr. Boggs' previous examination of the father, G.R. The youth court judge granted the parents' request and allowed them to choose their own physician for evaluation. The court included a specific list of questions to be addressed during the evaluation and allowed thirty days for this to be accomplished. A review hearing was set for May 23, 1996.
¶ 9. On June 10, 1996, the parents filed a petition for review and reconsideration, stating that they had complied with the court's requests by submitting themselves to the evaluations and asked that the court consider all pertinent and competent testimony in the review. The parents further requested visitation rights but not the return of custody of V.R.
¶ 10. A hearing for reconsideration was held on July 2, 1996. The parents presented the testimony of Dr. Betsy Heindl Storms, director of Child and Youth Services at Weems Mental Health Center, and Rachelle Crenshaw, a case manager at Weems. The parents also testified and the psychological evaluations of Dr. Geary Alford, the physician chosen by the parents, were admitted as evidence.
¶ 11. Dr. Alford examined both parents along with their youngest child, who was still in their custody. In his evaluation of the mother, B.J.R., he concluded,
As part of this evaluation, I reviewed records from the Lauderdale County Department of Human Services and records from Dr. Jan Boggs. The results of this review are quite troubling as data indicate a rather *244 long-standing pattern of conflict, sometimes violent, between [B.J.R.] and [G.R.] and also reflect a pattern of neglectful parenting and generally dysfunctional family life. Thus, while [B.J.R.] may have the `capacity' to provide at least adequate parenting, the family history indicates periods of inadequate actual behavioral performance.
Given the inherent problems with these parents taken together with their actual behavioral histories, and, in particular, considering the intellectual, emotional, behavioral, social, and financial demands that will naturally continually increase as small children grow and develop, I am very reluctant to recommend custody of the children be maintained by either of these parents.
If custody is granted and/or retained by [B.J.R.] or [G.R.] of one or both of their natural daughters, it would be strongly recommended that social service agencies (such as Child Welfare Department, perhaps Mississippi Families as Allies for Children's Mental Health, etc.) provide a case worker to follow and assist this family functioning, thereby providing both assistance to this family and providing for an early alert and intervention should significant problems develop.
On the father's parenting ability, he concluded,
Diagnoses:
1. Mental retardation (mild)
2. Personality Change/Disorder (combined aggressive and paranoid type) secondary to infantile organic brain damage (by history)
[G.R.] is likely to experience increasing difficulties as the children grow and develop. He is not capable of assisting his children in any but the most rudimental of school work, and his low tolerance for frustration and history of violence do pose risks as sweet, cuddly infants grow into more active, demanding, increasingly independent individuals as young children. [G.R.]'s own emotional maturity level is close to that of a young teenager. This combined with his intellectual deficits makes effective parenting of eventual teenage girls very, very questionable. With at least intermittent and long-term care under a psychiatrist and regularly taking appropriate medication as prescribed, [G.R.] may function relatively well as stably emotionally; however, his capacity to contribute to and nurture the children intellectually in general and academically in particular is and will remain inversely proportional to the children's chronological and mental ages. Put simply, the older they get, the less he can contribute. Given his sensitivity to his own deficits, his tendency to feel threatened, his demands "to have his own way" (as his wife puts it), his low frustration tolerance and history of violent reactions when taken together suggest significant risks for impaired-dysfunctional parenting as the children age. (Evaluations included in the record as exhibits.)
¶ 12. After listening to testimony and examining psychological evaluations at the review hearing, the judge found no reason for the court to change its previous ruling, i.e., cessation of parental visitation and the institution of TPR proceeding. He stated that in the best interest of the child he cannot ignore the I.Q. and functional limitations of G.R. and B.J.R. He also took into consideration the fact that the children have already been removed from the family's home more than once and the fact that the family did not maintain any of the $28,000 in settlement money obtained from a law suit eighteen (18) months prior to the hearing when they knew there was a child on the way. The family was relying on government subsidies and contributions from private charities for support at the time of the hearing. During their three years of marriage B.J.R. had given birth to two children and had suffered three miscarriages. B.J.R. also had a prior child from another relationship being raised by her mother. As a result, he overruled the motion to set aside his previous decision.

I. WHETHER IT IS A VIOLATION OF CONSTITUTIONAL SEPARATION OF POWERS AND DUE PROCESS FOR THE JUDICIAL BRANCH TO DIRECT THE DHS TO INITIATE TPR PROCEEDINGS WITHOUT A PRIOR APPLICATION *245 FOR SUCH BY THE DHS WITHOUT PRIOR NOTICE TO THE PARENTS.

A. The parents should have addressed the possibility of a separation of powers violation at the trial level; hence, they are procedurally barred from bringing the objection at the appellate level.
¶ 13. As we stated in Jones v. State, 606 So.2d 1051, 1058 (Miss.1992), "A trial judge will not be found in error on a matter not presented to him for decision." There is a general requirement that objections be raised at the trial level. See Riley v. Doerner, 677 So.2d 740, 743 n. 3 (Miss.1996); Smith v. State, 572 So.2d 847, 848 (Miss.1990) (determining that the court could not consider defendant's assignment complaining of two instructions where there was nothing in the record indicating that the defendant objected to them at the time of the trial); Burney v. State, 515 So.2d 1154, 1156-57 (Miss.1987) (stating that the defendant's failure to make contemporaneous objections to alleged improper closing remarks by the prosecution or to move for mistrial precluded appellate review).
¶ 14. The mere fact that a separation of powers issue is constitutional in nature does not absolve it from the general rule that objections must be raised at the trial level. See Colburn v. State, 431 So.2d 1111, 1114 (Miss.1983) (determining that failure of defendant to raise a constitutionality question about an aggravated assault statute in a proper motion before the trial court is a constitutional waiver of any error and precluded defendant from seeking reversal on this ground on appeal).
¶ 15. G.R. and B.J.R. were presented with ample opportunity to make their separation of powers claim during their numerous hearings. This claim could have been raised in the motion to reconsider, during the final review hearing or in the motion for a new trial. Consequently, this issue is barred at the appellate level.

The appellants did not provide the complete record for review by this Court; thus, all matters necessary for determining this issue are not present.
¶ 16. It is the duty of the appellant to provide the record of the trial proceedings wherein the error claimed is brought before this Court. See Smith, 572 So.2d at 849 (citing Walker v. Jones County Community Hosp., 253 So.2d 385 (Miss.1971)). The appellants have the burden of ensuring the record contains all facts necessary to the determination of the matters appealed. It is well settled that a reviewing court cannot consider matters which do not appear in the record and must limit itself to the facts that do appear in the record. See Herrington v. Spell, 692 So.2d 93, 101 (Miss.1997); American Fire Protection, Inc. v. Lewis, 653 So.2d 1387, 1390 (Miss.1995).
¶ 17. G.R. and B.J.R. claim that "the record reflects no application by the DHS for authority to pursue TPR proceedings and/or placement of the child for adoption before the issuance of the youth court's judgment upon review on November 9, 1995, wherein the Court directed the DHS to pursue termination of parental rights." Although the parents did not attend the review hearing, they are nevertheless required to provide the transcript of the hearing for review by this Court. The appellants have not fulfilled their duty to supply a complete and relevant record, and we are therefore without sufficient grounds to rule on the issue before us.

B. The youth court judge retains the power to direct DHS to initiate TPR proceedings without a prior application for such by the DHS.
¶ 18. In In re T.T., 427 So.2d 1382 (Miss.1983), we determined that the trial court had the authority to direct that proceedings for TPR be initiated where the court had decided, from all of the evidence, that it was in the best interest of the child regardless of the parents' compliance with the court's requirements. Id. at 1384. Miss. Code Ann. § 43-21-609 (1993) states six alternatives which the court may enter in a disposition order in neglect cases. In T.T. we stated that while § 43-21-609 does not specifically provide for ordering the filing of *246 TPR proceedings, the authority to do so is implicit when considering the section as a whole. Id.
¶ 19. Section 93-15-105(1)(1994) of the Miss.Code Ann. states, "Any person, agency or institution may file for termination of parental rights in the chancery court of the county in which a defendant or the child resides, or in the county where an agency or institution holding custody of the child is located." In T.T., we considered the broad authority of this section and determined that family courts have the power to direct the Department of Public Welfare to initiate proceedings for the termination of parental rights if such proceedings are in the best interest and future of a minor child. Id. at 1384.
¶ 20. G.R. and B.J.R. claim the youth court judge had no authority to initiate the proceedings for termination. The record does not indicate whether the judge issued a directive to DHS or whether DHS initiated these proceedings because the transcript from the November 9, 1995 hearing was not provided. However, we have previously determined in In re R.D., 658 So.2d 1378 (Miss. 1995) that the youth court can direct the DHS to initiate TPR proceedings in the child's best interest. In this case, the youth court judge was within the scope of his power.

C. There is no due process violation because the parents were properly notified of the November 9, 1995 review hearing.
¶ 21. Section 43-21-505(5)(1993) of the Mississippi Code states, "[N]otice of the time, date, place and purpose of any hearing other than adjudicatory and transfer hearings shall be given to all parties in person in court or by mail, or in any other manner as the youth court may direct."
¶ 22. The parents were summoned to appear at an August 31, 1995 hearing and were present when the judge determined that V.R. was a victim of neglect. At that time, the judge set the date for a review hearing of the judgment of neglect for October 31, 1995 and ordered a psychological evaluation of the parents. On October 31, 1995, the judge reset the hearing for November 9, 1995. The parents do not assert lack of notification in their brief, but only claim they were not aware that TPR proceedings could be instituted.
¶ 23. Section 43-21-505 merely requires that the parents be notified of the "purpose" of the hearing, not all possible consequences. Miss.Code Ann. § 43-21-505(5)(1993). The parents were present at the August 31, 1995 adjudication of neglect and were aware that they were to obtain psychological evaluations to be reviewed on October 31, 1995. The parents were made aware of the time, place and purpose of the August 31 hearing, and stated they knew the hearing was to determine the presence of neglect. This provided sufficient notice.
¶ 24. Furthermore, the court provided a second chance for the parents to receive evaluations, let them choose their own doctor and ordered DHS to hold the TPR proceedings in abeyance until the reconsideration hearing. Our review of the record before us establishes fundamental fairness throughout the proceedings. The procedures of the lower court evidence no due process violation.

II. THE YOUTH COURT JUDGE HAD PROBABLE CAUSE TO DIRECT THE INSTITUTION OF TPR PROCEEDINGS.
¶ 25. G.R. and B.J.R. argue the judge lacked probable cause to direct the initiation of TPR proceedings. However, since they failed to provide the transcript of the November 9, 1995 hearing, we are presented with no method of examining the evidence upon which the trial judge determined the existence of probable cause. G.R. and B.J.R. have failed to carry their burden of providing a complete record for review. See Smith, 572 So.2d at 849. Notwithstanding the failure to provide a complete record, based upon the evidence presented at the reconsideration hearing on July 2, 1996, we find the judge was correct in finding the existence of probable cause to direct the initiation of TPR proceedings.
¶ 26. In custody battles involving the natural parent and a third party, it is presumed that the child's best interest will be served by placement in the custody of the *247 natural parent and to overcome this presumption there must be a clear showing of a statutorily defined reason why the parent should not retain custody. Sellers v. Sellers, 638 So.2d 481, 484 (Miss.1994). Miss.Code Ann. § 93-15-103(3)(d)(i)(1994) states the grounds for the termination of parental rights:
The parent exhibits ongoing behavior which would make it impossible to return the child to the parent's care and custody:(i) Because the parent has a diagnosable condition unlikely to change within a reasonable time such as alcohol or drug addiction, severe mental deficiencies or mental illness, or extreme physical incapacitation
....
¶ 27. In examining child custody cases, the judge should consider any and all evidence which aids in reaching the ultimate decision. Murphy v. Murphy, 631 So.2d 812, 815 (Miss.1994). The polestar consideration, however, is the best interest of the child. See Riley, 677 So.2d at 743; In re R.D., 658 So.2d 1378 (Miss.1995); Murphy, 631 So.2d at 815. The youth court judge was provided with probable cause to initiate proceedings through the testimony of Dr. Geary Alford, who diagnosed G.R. as mildly retarded and declined to recommend the return of custody to the parents.
¶ 28. G.R. and B.J.R. cite Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) in support of their contention that parental interest should be considered as much as the child's interest. However, Santosky dictates if the state can prove by clear and convincing evidence that it is in the child's best interest to terminate parental rights and the parents are provided with fundamentally fair procedures, the parents' wishes are not the judge's main concern.
¶ 29. The youth court judge in the instant case evaluated the testimony of both parents and two social workers as well as the psychological evaluations of Dr. Geary Alford. Neither social worker suggested returning custody to the parents. Dr. Storms stated there was a small possibility that the parents could improve but conditions in the home could also worsen with time. Dr. Alford was clearly against returning V.R. to her parents, declaring G.R. and B.J.R. mentally unfit to deal with the complexities of a growing child. Therefore, the evidence presented to the court was sufficient to meet the grounds for termination listed in § 93-15-103(3)(d)(i).

CONCLUSION
¶ 30. After close consideration of the record before us, we find no due process issue in the present case. We further find the trial judge did not err in his determination that probable cause existed to order TPR proceedings.
¶ 31. AFFIRMED.
PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, JAMES L. ROBERTS, Jr., SMITH AND WALLER, JJ., concur.
McRAE, J., CONCURS IN RESULT ONLY.
NOTES
[1] The record only contains transcripts of the hearings on August 31, 1995, and July 2, 1996.