IRVING, J.,
for the Court.
¶ 1. Greg Mark Shorter was tried and convicted by a Warren County jury of aggravated assault. He was sentenced to a term of eight years, with five years suspended, in the custody of the Mississippi Department of Corrections. Shorter appeals and submits that the trial court committed reversible error by (1) overruling his motion for a directed verdict, (2) failing to properly instruct the jury on the law of self-defense, and (3) overruling his motion for a mistrial due to jury confusion. Finding no error, we affirm on all issues.
FACTS
¶ 2. On the evening of July 4, 2000, Shorter went to the apartment of his child’s mother and former girlfriend, Shelia Jenkins. Jenkins’s new boyfriend, John Wallace, was present at the apartment during that time. What transpired next is the subject of dispute.
¶ 3. At the trial, the State presented Jenkins and Wallace as witnesses. Jenkins testified that Shorter came to her house and stated that he wanted to see the children[1] for the Fourth of July. Jenkins stated that she told Shorter that the children were not at home. Shorter asked to come in, but she told him “no.” Shortly thereafter, Shorter was given permission to come in and talk to Wallace. While the men were talking, Shorter inquired about furniture located in the apartment and asked Wallace if he had bought it. Jenkins testified that Wallace then stood up and stated, “Let’s take this conversation outside.” Jenkins stated that Wallace went outside and she and Shorter remained in the house. Jenkins also claimed that she told Shorter that it was time for him to leave. She alleged that Wallace then came back in the house after hearing this, and placed his hand on Shorter and told him that it was time for him to leave. Jenkins testified that at no time did she see a weapon or anything in Wallace’s hand, nor did she see Wallace hit or threaten Shorter. The two men then started tussling, and Wallace fell to the floor. Jenkins also stated that, as Shorter was leaving, he remarked, “You and your boyfriend have a nice life.” Jenkins testified that she discovered that Wallace was stabbed when she tried to help him up.
¶ 4. Wallace testified that Jenkins let Shorter come in the house and Jenkins and Shorter began having a conversation. Wallace claimed that Shorter was telling Jenkins that the two (Shorter and Jenkins) had been together for eleven years and had a child together and then asked if they could get back together. Wallace testified that Shorter then inquired about who paid for the furniture, and he (Wallace) told Shorter that it was none of his business. Wallace testified that he then heard a knife click. Wallace further stated that he told Shorter to leave, and he (Wallace) went outside and told Shorter to come outside. Wallace claimed that he walked around the street near Jenkins’s car, and came up by Shorter’s van, but Shorter would not come out. Wallace testified that he did not have a weapon or anything. He stated that he came back inside and raised his hand to tell Shorter it was time to leave but did not touch him. He testified that when he raised his hands, Shorter began stabbing him. Wallace testified that Shorter had the knife and wiped the blood on Jenkins’s clothes and told her, “I *454 hope you and your man have a happy life now.”
¶ 5. Shorter testified that he went by the apartment to get the children. He testified that Jenkins let him in the house and that he and Jenkins began having a conversation. Shorter further testified that Wallace then got up off the couch and got in his face and remarked, “Come on, we can settle this, we can handle this outside.” Shorter claimed that Jenkins then grabbed Wallace by the arm because Wallace wanted to fight. Shorter stated that he could smell that Wallace had been drinking. Shorter alleged that Wallace then turned and went out the door and kept calling him outside. Shorter claimed that he and Jenkins remained in the house talking, and Wallace kept yelling for him to “come on outside.” Shorter testified that Wallace then went toward his (Wallace’s) car. He also testified that Wallace came back in the house and charged at him. Shorter stated that Wallace “kept mumbling something and kept wanting to fight.” Shorter also stated that Wallace raised both hands toward him, and he was just defending himself. Shorter’s attorney asked him whether he pulled the knife out during the altercation, and Shorter replied:
Yes, when he come back in at me, yes, sir. When he grabbed me I couldn’t really tell what he had in his other hand. But I kept fighting him off and breaking his hold and at the same time trying to see what he had. But I couldn’t and he just kept yelling. So that is when I pulled my knife. I know he had something but I couldn’t tell what it was. He didn’t have it when he went out.
¶ 6. However, on cross-examination, Shorter testified that he did not remember opening the knife and that it opened sometime during the struggle. At the close of the State’s case-in-chief, Shorter moved for a directed verdict on the ground that the testimony presented by the State was insufficient to raise a prima facie case against him. The judge denied the motion. Additional facts will be related during our discussion of the issues.
ANALYSIS AND DISCUSSION OP THE ISSUES
(1) Motion for Directed Verdict
¶ 7. Shorter first contends that the trial court committed reversible error by overruling his motion for a directed verdict. Shorter claims that testimony offered by the State’s witnesses was contradictory and insufficient to sustain a charge of aggravated assault. He alleges that no reasonable and fair-minded jury could accept such contradictory evidence and find him guilty of aggravated assault.
¶ 8. Our standard of review with regard to motions challenging the sufficiency of the evidence is well established. A directed verdict “challenge[s] the legal sufficiency of the evidence.” McClain v. State, 625 So.2d 774, 778 (Miss.1993). “We are authorized to reverse only where, with respect to one or more of the elements charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.” Id.
¶ 9. We find the evidence which is set forth earlier in this opinion is sufficient evidence to support Shorter’s conviction of aggravated assault. Although Shorter points to conflicts in Jenkins’s and Wallace’s testimony, the law is well settled that “it is the role of the jury to evaluate the veracity of witnesses.” Montana v. State, 822 So.2d 954, 965(¶ 51) (Miss.2002). Further, “it is the jury’s province to resolve such conflicts, and the jury is free to accept the testimony of some witnesses and reject that of others, in whole or in part.” Id. at 966. An examination of the *455 record does not reveal a material contradiction between the two witnesses’ testimonies. Accordingly, we find that this issue lacks merit.

(2) Self-Defense Instruction

¶ 10. Shorter’s next two assignments of errors, for the sake of clarity of discussion, will be treated as one. Shorter first contends that the jury was never instructed that he did not have to prove that he acted in self-defense and that this failure to instruct rendered instruction S-3 confusing. He then concludes that the end result was that he suffered unfairness and injustice.
¶ 11. Our supreme court has consistently held that “when determining whether error lies in the granting or refusal of various instructions, we must consider all the instructions given as a whole.” Simmons v. State, 805 So.2d 452, 476(¶37) (Miss.2001). “When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.” Id.
¶ 12. Instruction S-3 reads as follows: The court instructs the jury that to make the stabbing of another person justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present and urgent, or the defendant must have reasonable grounds to apprehend a design on the part of the victim to kill him or to do him some great bodily harm, and in addition to this he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the ground upon which the defendant acts.
If you find from the evidence in this case that (1) Greg Mark Shorter was not in actual, present and urgent danger, OR, (2) Greg Mark Shorter did not have reasonable grounds to apprehend a design on the part of John Wallace to kill Greg Mark Shorter or to do him some great bodily harm, AND, (3) Greg Mark Shorter did not have reasonable grounds to apprehend that there was imminent danger of John Wallace accomplishing some great bodily harm to Greg Mark Shorter, THEN, You may find that Greg Mark Shorter did not act in necessary self-defense.
¶ 13. Shorter objected to instruction S-3 at trial on an entirely different basis than that raised on appeal. We have stated that asserting grounds for an objection on appeal that differ from the ground given for the objection at trial does not properly preserve the objection for appellate review. Montana, 822 So.2d at 959(¶ 12). Notwithstanding, we find that the jury was properly instructed as to the State’s burden to disprove Shorter’s claim of self-defense. Instruction S-l sets forth the elements of aggravated assault. The instruction specifically stated, “if you find from the evidence in this case beyond a reasonable doubt ... [that] ... Greg Mark Shorter was not acting in necessary self defense, then you should find the defendant, Greg Mark Shorter, guilty of aggravated assault.” In addition to instruction S-l, the jury was given instruction D-5, which stated that “the court instructs the jury that the burden of proof is upon the State to establish the defendant’s guilt of the crime charged in the indictment, ... but the State must prove the Defendant’s guilt beyond a reasonable doubt.”
¶ 14. We find that while the jury instructions did not specifically state that Shorter did not have to prove that he acted in self-defense, the language in the instructions clearly set forth the elements of the crime and informed the jury that the burden of proof was on the State to prove that Shorter did not act in self- *456 defense. Therefore, considering the instructions together, we find that the jury was properly instructed.
¶ 15. In support of his argument that the instructions did not fairly announce the law of the case and created injustice and confusion, Shorter relies on the fact that during jury deliberations, the jury sent a note to the judge apparently for clarification of certain terms used in the instructions on the issue of self-defense. Shorter then moved for a mistrial based upon the jury being confused about the instructions and the meaning of the term “self-defense.” The judge denied the motion and stated that he thought the instructions were adequate to instruct the jury.
¶ 16. The note at issue was not adequately made a part of the record. The record indicates that the entire note was not duplicated during the copying process. The courts have repeatedly held that “it is the duty of the appellant to provide [a] record of the trial proceedings [when an error] is brought before this Court.” In Re V.R., G.R., and B.J.R. v. Dep’t of Human Services, 725 So.2d 241, 245(¶ 16) (Miss.1998). Similarly, “the appellants have the burden of insuring the record contains all facts necessary to the determination of the matters appealed.” Id. “A reviewing court cannot consider matters which do not appear in the record and must limit itself to the facts that do appear in the record.” Id. Since Shorter failed to fulfill his duty to supply a complete record by providing this Court with a copy of the entire note, we decline to discuss this issue any further. To do so would be speculation on our part as to the note’s content, and without a showing of what the trial court considered and the reasons for its ruling, it is simply impossible to gauge whether its ruling was correct or not.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF WARREN COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF EIGHT YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE YEARS SUSPENDED, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., THOMAS, LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.

. Shorter and Jenkins had only one child together although she had two other children from a prior relationship.