986 So.2d 1065 (2008)
Douglas G. COSENTINO, Appellant,
v.
Phyllis L. COSENTINO, Appellee.
No. 2006-CA-01613-COA.
Court of Appeals of Mississippi.
July 1, 2008.
*1066 Joseph R. Meadow, Gulfport, attorney for appellant.
Earl L. Denham, Wendy C. Hollingsworth, Ocean Springs, attorneys for appellee.
Before KING, C.J., IRVING and CHANDLER, JJ.
IRVING, J., for the Court.
¶ 1. Douglas G. Cosentino appeals from an order of the Jackson County Chancery Court ordering him to pay alimony to his former wife, Phyllis L. Cosentino, in the amount of $7,000 per month. The issue before this Court is whether the chancellor on remand adequately considered Ferguson[1] factors six and seven and if so, whether it erred in awarding $7,000 in permanent periodic alimony to Phyllis.
¶ 2. Finding that the chancellor erred, we reverse and render.

FACTS
¶ 3. This is the second time that this case has been before this Court. Our initial opinion is reported at Cosentino v. Cosentino, 912 So.2d 1130 (Miss.Ct.App. 2005) (Cosentino I). Douglas and Phyllis were married for thirty-three years, and from that union, two children were born. The parties agreed to an irreconcilable differences divorce, and the chancellor divided the marital estate, which was valued at approximately $5.1 million. Phyllis was awarded $2,615,815, and Douglas was awarded $2,560,390. The chancellor also awarded Phyllis $7,000 per month in periodic alimony.
¶ 4. In Cosentino I, we found that the chancellor failed to address all of the relevant Ferguson factors, namely, factors six and seven. We reversed and remanded "for an appropriate analysis of [those] factors, and if justified, an analysis of the Armstrong[2] factors. . . ." Cosentino, 912 So.2d at 1133(¶ 12).
¶ 5. Both parties were offered but declined the opportunity to be heard on remand, *1067 so the chancellor issued a ruling based on the evidence that had been presented during the alimony hearing.

ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 6. "Whether to award alimony and the amount to be awarded are largely within the discretion of the chancellor." Creekmore v. Creekmore, 651 So.2d 513, 517 (Miss.1995) (citing Cherry v. Cherry, 593 So.2d 13, 19 (Miss.1991)). A chancellor's decision to award alimony will not be reversed on appeal "unless it is found to be against the overwhelming weight of the evidence or manifestly in error." Id. (citing McNally v. McNally, 516 So.2d 499, 501 (Miss.1987)). In Ferguson, the Mississippi Supreme Court enunciated factors that a chancellor should consider when dividing a marital estate:
1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
a. Direct or indirect economic contribution to the acquisition of the property;
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
3. The market value and the emotional value of the assets subject to distribution.
4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
8. Any other factor which in equity should be considered.
Ferguson, 639 So.2d at 928.
¶ 7. We note at the outset that neither party found it necessary to provide this Court with a transcript of the hearing or a copy of the chancellor's opinion wherein she addressed the Ferguson factors. Although we are aware that "[i]t is the duty of the appellant to provide the record of the trial proceedings wherein the error claimed is brought before this Court[,]" Phyllis was not precluded from doing so. In re V.R., 725 So.2d 241, 245(¶ 17) (Miss.1998). In Cosentino I, we found that the chancellor failed to conduct a "full and appropriate" analysis of Ferguson factors six and seven. Cosentino, 912 So.2d at 1133(¶ 12). Employing the law of the case doctrine,[3] we take judicial notice *1068 that we, in Cosentino I, found nothing in the record to justify the chancellor's alimony award. Id. We proceed based on the record certified in this case because, as previously stated, no evidentiary hearing was conducted on remand. Again, we find that the chancellor failed to justify her alimony award. We will first explain why we find that the chancellor failed to follow our instructions as they relate to factor six and conclude by addressing the chancellor's treatment of factor seven.
¶ 8. After this case was remanded for the chancellor to make specific findings, she again failed to provide any justification for the alimony award. In her ruling after remand, the chancellor addressed factor six by simply stating that: "The marital property had been divided, by agreement, in equal portions to both the husband and the wife. The portion received by each spouse was in excess of Two Million Dollars."
¶ 9. In Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1994), the Mississippi Supreme Court held that:
[T]he character of the parties' assets, i.e., marital or nonmarital, must be determined pursuant to Hemsley [v. Hemsley, 639 So.2d 909 (Miss.1994)]. The marital property is then equitably divided, employing the Ferguson factors as guidelines, in light of each parties' nonmarital property. Ferguson, 639 So.2d at 928. If there are sufficient marital assets which, when equitably divided and considered with each spouse's nonmarital assets, will adequately provide for both parties, no more need be done. If the situation is such that an equitable division of marital property, considered with each party's nonmarital assets, leaves a deficit for one party, then alimony based on the value of nonmarital assets should be considered.
(Emphasis added). The chancellor did not address whether Phyllis's property settlement of more than two million dollars eliminated her need for alimony. The chancellor did not articulate any reason why Phyllis needed more than the $2,615,815 that she was awarded. Inasmuch as alimony should only be awarded when the division of the marital estate leaves one party in a deficit, we find that the record simply does not support the chancellor's award.
¶ 10. As for the chancellor's treatment of factor seven, we also find nothing in the record to support this finding. The chancellor justified her alimony award by stating, inter alia, that:
The husband, Dr. Cosentino, has a flourishing radiology practice from which he earns a large income and shares none of the profits. At the time of trial, he was a sole practitioner in a lucrative practice. Mrs. Cosentino is not employable in her chosen field of medical technology and, at the time of trial in 2003, was 55 years old. She could easily outlive the assets apportioned to her pursuant to the property settlement if she continues to live in the manner to which she became accustomed during the 33[-]year marriage.

*1069 Phyllis has not worked in the field of medical technology in excess of 25 years. Her training is obsolete and would require substantial education and retraining before she would be marketable in this occupation. Absent alimony income, Phyllis'[s] only means of income would be that generated from the management of funds she received from the equitable distribution of marital property she equally split with her husband.
Clearly, the chancellor's finding that Phyllis "could easily outlive" her share of the marital estate is speculative at best, as the converse is also true: Phyllis may not outlive her share of the marital estate. The proper question before the chancellor was whether Phyllis needed alimony at the time of the property division, not whether she may need it at some time in the future. We find that the chancellor's alimony award of $7,000 per month is against the overwhelming weight of the evidence and is hereby reversed and rendered.
¶ 11. THE JUDGMENT OF THE JACKSON COUNTY CHANCERY COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., LEE, P.J., CHANDLER, ISHEE AND ROBERTS, JJ., CONCUR. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MYERS, P.J., BARNES AND CARLTON, JJ.
GRIFFIS, J., dissenting:
¶ 12. Because I find that the chancellor's award of alimony is not against the overwhelming weight of the evidence or manifestly in error, I must respectfully dissent from the majority's decision. For the following reasons, I would affirm the chancellor's "Ruling After Remand For Further Findings."
¶ 13. The majority holds that the chancellor provided no justification for the alimony awarded to Phyllis because the chancellor did not properly address the issues under the sixth and seventh Ferguson factors. For purposes of deciding this issue on appeal, it is necessary to review the chancellor's findings as to these factors:
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future f[r]iction between the parties:
The marital property had been divided, by agreement, in equal portions to both the husband and the wife. The portion received by each spouse was in excess of Two Million Dollars.
7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity:
The needs of the parties for financial security are very important in this particular case. These are people entering the latter part of middle age. Douglas has the income and the earning capacity to provide for his own needs for the remainder of his life. The property distribution agreement and the financial security of both parties [were] considered by the Court before setting alimony. The husband, Dr. Cosentino, has a flourishing radiology practice from which he earns a large income and shares none of the profits. At the time of trial, he was a sole practitioner in a lucrative practice.
Mrs. Cosentino is not employable in her chosen field of medical technology and, at the time of trial in 2003, was 55 years old. She could easily outlive the assets apportioned to her pursuant to the property settlement if she continues to live in the manner to which she became *1070 accustomed during the 33-year marriage.
The Court also considered that the award of periodic alimony is modifiable in the future should Dr. Cosentino's financial situation change. At the time of trial, the Court considered the assets of both parties after the property division, the ages of both parties, their contributions towards acquisition of the marital assets, their ages, the great disparity in income and earning capacity, the future financial security of both, along with the lifestyle to which they had become accustomed; and determined that alimony for Phyllis in the amount of $7,000 per month was justified.
Phyllis could easily outlive her share of the financial settlement received from the division of marital property considering her age (55 years at the time of trial), her health insurance expense for the duration of her life, health problems that come with age, and her lack of earning capacity. Phyllis has not worked [sic] in the field of medical technology in excess of 25 years. Her training is obsolete and would require substantial education and retraining before she would be marketable in this occupation. Absent alimony income, Phyllis's only means of income would be that generated from the management of funds she received from the equitable distribution of marital property she equally split with her husband.
Douglas, on the other hand has a very large wage[-]earning capacity and generates a large income for himself. He was a partner in a lucrative radiological practice which generated a large income and afforded the family a luxurious lifestyle. The family traveled abroad, constructed a large home on the beach without incurring any debt, purchased automobiles and personal property as desired, provided for the education of their children, and accumulated a large net worth.
At the time of trial, Douglas's two business partners had retired and he was the sole owner and income recipient for the profit generated by the practice. He has a large disposable income, considering the bonus he receives at the end of each year. As mentioned in the original Findings of Facts and Conclusions of Law the year end bonus for the year prior to trial (2002) was in excess of $200,000.00.
The disparity in wage[-]earning capacity between the parties is enormous and both are entering the threshold of their older years where their health will begin to decline as is inevitable with all human beings. This will pose an expense to Phyllis for which she will need income to preserve her financial security. Phyllis also must establish a household for herself which will be a significant expense if her standard of living is to be comparable to that of the marriage.
After addressing each of the Ferguson factors in this supplemental ruling, this Court's analysis of the Armstrong factors set out in its original Findings of Fact and Conclusions of Law remains the same. After considering and weighing each of the Ferguson and Armstrong factors, together with the testimony and evidence presented at trial, the Court finds there is a justifiable basis for the alimony award and exercises its discretion in finding $7,000.00 per month to be appropriate.
¶ 14. Ferguson factor six requires the chancellor to determine whether the division of the parties' property can be done in such a way as to eliminate the need for alimony payments. Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994). However, here, the marital property had been divided *1071 equally by the agreement of the parties. The sole issue before the chancellor was whether alimony should be awarded in addition to the property division. Thus, the chancellor had no discretion to divide the property in a way that would eliminate any need that Phyllis had for alimony payments.[4]
¶ 15. Chancellors are required to make specific findings of fact as to the Ferguson factors. Id. at 929. I consider the chancellor's finding under factor six sufficient. She noted that the marital property had already been divided in equal portions upon the agreement of the parties. Naturally, this finding precludes any ability on the part of the chancellor to analyze "[t]he extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties," as required by factor six. Id. at 928. The issue of property division was not before the chancellor.
¶ 16. I also disagree with the majority's holding that the chancellor did not articulate why Phyllis needed more than the amount she received in the property settlement. While those reasons were not stated under the chancellor's analysis of factor six, they were certainly included in the analysis under factor seven. Further, the basis for the chancellor's award of alimony in addition to the property settlement was considered by the chancellor in her analysis of the Armstrong factors as one of the factors used to determine whether alimony should be awarded is the "assets of each party." Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993).
¶ 17. I further conclude that the chancellor made the required findings as to Ferguson factor seven. Under factor seven, which concerns "[t]he needs of the parties for financial security," the chancellor concluded that Phyllis required an amount above the property settlement to continue the standard of living to which she had become accustomed during the marriage. See Ferguson, 639 So.2d at 928. Again, the chancellor had no discretion to adjust the property division, but the chancellor specifically stated that "the property distribution agreement and the financial security of both parties [were] considered... before setting alimony." The chancellor considered such facts as the large disparity between Douglas's income and Phyllis's lack of income, Phyllis's lack of employment opportunities, the parties' ages, the manner of living that Phyllis became accustomed to during thirty-three years of marriage, the parties' contributions toward acquisition of the marital assets, and the assets of both parties after the property division. It is obvious from these findings that the chancellor determined that Phyllis's financial security required more than the amount she received in the property settlement. See Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss. 1994) (holding that alimony should be considered if an equitable property division *1072 leaves a deficit for one party). Thus, after finding that the parties' property division left Phyllis with a deficit, the chancellor proceeded to the next step and analyzed the Armstrong factors, holding that an award of alimony to Phyllis was justified.
¶ 18. The chancellor's findings after remand were sufficient to support the alimony award. I find that the award is neither against the overwhelming weight of the evidence nor manifestly in error. Accordingly, I would affirm the chancellor's judgment.
MYERS, P.J., BARNES AND CARLTON, JJ., JOIN THIS SEPARATE OPINION.
NOTES
[1] In Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss. 1994), the Mississippi Supreme Court enunciated eight factors to be considered by trial courts in equitably dividing the marital estate.
[2] Armstrong v. Armstrong, 618 So.2d 1278 (Miss. 1993).
[3] In Public Employees' Retirement System v. Freeman, 868 So.2d 327, 330(¶ 10) (Miss. 2004) (quoting Moeller v. American Guarantee and Liability Insurance Co., 812 So.2d 953, 960(¶ 22) (Miss.2002)), the Mississippi Supreme Court addressed the law of the case doctrine as follows:

The doctrine of the law of the case is similar to that of former adjudication, relates entirely to questions of law, and is confined in its operation to subsequent proceedings in the case. Whatever is once established as the controlling legal rule of decision, between the same parties in the same case, continues to be the law of the case, so long as there is a similarity of facts. This principle expresses the practice of courts generally to refuse to reopen what has previously been decided. It is founded on public policy and the interests of orderly and consistent judicial procedure.
[4] Because the parties agreed to the property division, that division was not an issue before the chancellor. Consequently, the only issue before this Court in the parties' first appeal was the chancellor's award of periodic alimony. See Cosentino v. Cosentino, 912 So.2d 1130, 1131(¶ 1) (Miss.Ct.App.2005). As the property division was not an issue on appeal, the Ferguson factors seem inapplicable to the determination of whether the alimony award is proper. See Ethridge v. Ethridge, 648 So.2d 1143, 1145 (Miss.1995) (holding that "[b]ecause equitable division of marital property is not at issue, and the sole issue is the failure to award alimony, neither Hemsley [nor] Ferguson is relevant to the actual disposition of the issue raised."). However, because this Court remanded the case for specific findings under Ferguson factors six and seven, I will address why those findings are sufficient to justify the chancellor's progression to the Armstrong analysis and subsequent alimony award.