WILSON, J., CONCURRING IN PART AND DISSENTING IN PART:
 

 ¶ 49. I concur in Parts I and II of the lead opinion, which affirm the chancery court's finding that the 209B house is marital property and the chancery court's award of $1,600,000 in lump-sum alimony. I respectfully dissent as to Part III, which affirms an additional award of $6,500 per month in periodic alimony.
 

 ¶ 50. "Alimony is considered only after the marital property has been equitably divided and the chancellor determines one spouse has suffered a deficit."
 
 Lauro v. Lauro
 
 ,
 
 847 So.2d 843
 
 , 848 (¶ 13) (Miss. 2003). When we refer to a "deficit," we do
 
 not
 
 mean that one party is left with fewer assets or less income than the other.
 
 Layton v. Layton
 
 ,
 
 181 So.3d 275
 
 , 282 (¶ 17) (Miss. Ct. App. 2015). "Rather, the question is whether the spouse seeking alimony is left 'with a deficit
 
 with respect to having sufficient resources and assets to meet his or her needs and living expenses
 
 .' "
 

 Id.
 

 (quoting
 
 Jackson v. Jackson
 
 ,
 
 114 So.3d 768
 
 , 777 (¶ 22) (Miss. Ct. App. 2013) ). "If after the equitable distribution of the marital property, both parties have been adequately provided for, then an award of alimony is not appropriate."
 
 Cosentino v. Cosentino
 
 ,
 
 912 So.2d 1130
 
 , 1132 (¶ 10) (Miss. Ct. App. 2005) ("
 
 Cosentino I
 
 ").
 

 ¶ 51. Before considering Mary's request for periodic alimony, the chancery court awarded her a total of $2,184,608.41 in lump-sum payments, consisting of an "equalization payment" of $584,608.41 and lump-sum alimony of $1,600,000.
 
 [7]
 
 The court found that the equalization payment and lump-sum alimony would (1) allow Mary to purchase a $600,000 home without a mortgage and thereby "eliminate" any monthly mortgage payment; (2) enable Mary to pay off all of her credit card debt and thereby "eliminate" her monthly payments on that debt; and still (3) "provide Mary with monthly income even if she decides to remain at home." The court also found that "Mary was indefinite about the basis of some of [her remaining] estimated expenses." However, the court still found that Mary should be granted $6,500 per month in periodic alimony.
 

 ¶ 52. Mary estimated post-divorce living expenses for herself alone
 
 [8]
 
 of $10,736 per month. However, Mary's estimate included both a monthly mortgage payment of $3,432 and credit card payments of $707 per month. As noted above, the chancery court specifically found that the equalization payment and lump-sum alimony would enable Mary to "eliminate" both of those expenses. Once those two expenses are eliminated, Mary's alleged expenses drop to $6,597 per month. To be clear, these are the total expenses that Mary claims-accepted at face value with no further reductions. In other words, this is the amount that
 
 Mary herself
 
 claimed was necessary to maintain the life "to which she has become accustomed."
 
 Rogillio v. Rogillio
 
 ,
 
 57 So.3d 1246
 
 , 1250 (¶ 11) (Miss. 2011).
 

 ¶ 53. In summary, the stated intent and practical effect of the chancery court's judgment was to allow Mary to buy a
 $600,000 home with no mortgage, pay off all of her other debt, and still have over $1,500,000 remaining and available to her. Nonetheless, the chancery court then made an additional award of periodic alimony ($6,500 per month) that-by itself-is essentially equal to Mary's remaining claimed living expenses ($6,597 per month).
 

 ¶ 54. The award of periodic alimony should be reversed and the case remanded for the same basic reasons that this Court reversed the award in
 
 Cosentino
 
 ,
 
 supra
 
 . In
 
 Cosentino
 
 , the chancery court awarded the wife marital assets valued $2,615,815
 
 and
 
 $7,000 per month in periodic alimony.
 
 Cosentino I
 
 ,
 
 912 So.2d at 1131
 
 (¶¶ 1-6). On appeal, this Court reversed the award of periodic alimony because the chancery court did not adequately explain the reasons or need for alimony in light of the substantial assets awarded to the wife.
 

 Id.
 

 at 1132-33
 
 (¶¶ 9-12). In remanding the case for further proceedings, we emphasized that "[i]f after the equitable distribution of the marital property, both parties have been adequately provided for, then an award of alimony is not appropriate."
 

 Id.
 

 at 1132
 
 (¶ 9).
 

 ¶ 55. On remand in
 
 Cosentino
 
 , the chancery court again awarded $7,000 per month in periodic alimony.
 
 Cosentino v. Cosentino
 
 ,
 
 986 So.2d 1065
 
 (Miss. Ct. App. 2008) (
 
 Cosentino II
 
 ). The husband appealed, and on appeal this Court again reversed, stating: "The chancellor did not address whether [the wife's] property settlement of more than two million dollars eliminated her need for alimony. The chancellor did not articulate any reason why [the wife] needed more than the $2,615,815 that she was awarded."
 

 Id.
 

 at 1068
 
 (¶ 9). We emphasized that "alimony should be awarded only when the division of the marital estate leaves one party in a deficit," and we held that the chancery court's findings were insufficient to show that there was any deficit or need for an award of alimony.
 

 Id.
 

 We also stated that "the chancellor's finding that [the wife] 'could easily outlive' her share of the marital estate [was] speculative at best."
 

 Id.
 

 at 1069
 
 (¶ 10). We stated that "[t]he proper question before the chancellor was whether [the wife] needed alimony at the time of the property division, not whether she [might] need it at some time in the future."
 

 Id.
 

 Therefore, we reversed
 
 and rendered
 
 the award of periodic alimony.
 

 Id.
 

 ¶ 56. Similar to
 
 Cosentino
 
 , the chancery court in this case "did not articulate any reason why [Mary] needed more than the [$2,184,608.41] that she was awarded."
 
 Cosentino II
 
 ,
 
 986 So. 2d at 1068
 
 (¶ 9). The chancery court did not explain how the division of the marital estate, the equalization payment, and lump-sum alimony left Mary "in a deficit"-much less a "deficit" essentially equal to her claimed living expenses.
 

 Id.
 

 Stated differently, the chancery court did not consider that it had already awarded Mary "sufficient resources and assets to meet" a significant part, if not all, of her future "needs and living expenses."
 
 Jackson
 
 ,
 
 114 So.3d at 777
 
 (¶ 22). Here, Mary's "resources and assets" obviously include lump-sum alimony and the earnings on those funds,
 
 [9]
 
 but the chancery
 court's award of periodic alimony failed to account for those available resources. As in
 
 Cosentino I
 
 , we should reverse the award of periodic alimony and remand the case for further consideration of this issue, taking into account Mary's available resources and assets.
 

 ¶ 57. The above discussion analyzes the chancery court's decision on its own terms. The chancery court appropriately recognized that the equalization payment and lump-sum alimony would allow Mary to buy a $600,000 home with no mortgage and "eliminate" her high-interest credit card debt. This would reduce Mary's claimed expenses to $6,597 per month-and still leave her with at least $1,500,000 before the issue of periodic alimony is even considered.
 

 ¶ 58. In contrast, the lead opinion distorts the analysis of this issue by starting with the unwarranted assumption that Mary's annual expenses will "total in excess of $128,000."
 
 Ante
 
 at ¶ 45. The lead opinion arrives at this inflated figure by including both a $3,432 monthly mortgage payment and $707 in minimum monthly payments on credit card debts. But, as discussed above, the chancery court specifically found that Mary could "eliminate" both of those expenses when it awarded her an equalization payment and lump-sum alimony totaling $2,184,608.41. Nonetheless, and without giving any reason, the lead opinion assumes exactly the
 
 opposite
 
 -that Mary will have a $3,432 monthly mortgage payment. And the lead opinion further assumes that, even after receiving more than two million dollars in lump-sum payments, Mary will continue, month after month, to make only minimum payments on high-interest credit card debts.
 

 ¶ 59. In addition to inflating Mary's expenses, the lead opinion misapplies the concept of a "deficit" for purposes of alimony. The lead opinion finds "a deficit between Jason and Mary" by "comparing" their respective "financial circumstances."
 
 Ante
 
 at ¶¶ 46-47. The lead opinion states that "Jason will be living in a $1,500,000 house while Mary lives, with their three children, in a house worth $600,000."
 
 Ante
 
 at ¶ 46. But, as discussed above, Mary does not have a "deficit" just because Jason has a bigger house or a greater earning capacity. "If the equitable division of property leaves neither spouse with a deficit
 
 with respect to having sufficient resources and assets to meet his or her needs and living expenses
 
 , then no alimony award is appropriate."
 
 Jackson
 
 ,
 
 114 So.3d at 777
 
 (¶ 22) (emphasis added). Any award of alimony must be based on the needs and living expenses of the spouse requesting it. If that spouse is "adequately provided for, then an award of alimony is not appropriate."
 
 Cosentino I
 
 ,
 
 912 So.2d at 1132
 
 (¶ 10). A court cannot award alimony solely because the payor is wealthy enough to pay it.
 

 ¶ 60. The judgment of the chancery court may not strike anyone as unjust. The parties consented to an irreconcilable differences divorce, but Jason's adultery appears to have been the cause. Moreover, Jason has been brought into a successful family business. If the business's past performance is any indication, Jason should be able to pay alimony of $6,500 per month without much difficulty. For these reasons, the result in this case may not stir feelings of outrage or great sympathy for Jason. However, under prevailing Supreme Court precedent, adultery and earning capacity
 are not a basis for awarding $6,500 per month in permanent alimony if the recipient spouse is already "adequately provided for." Therefore, I respectfully concur in part and dissent in part.
 

 IRVING, P.J., CARLTON, GREENLEE AND TINDELL, JJ., JOIN THIS OPINION.
 

 The award of lump-sum alimony in this case should be viewed as part of the equitable distribution since it was based on the
 
 Ferguson
 
 factors, rather than the
 
 Armstrong
 
 factors, and preceded the court's consideration of periodic alimony.
 
 See
 

 Davenport v. Davenport
 
 ,
 
 156 So.3d 231
 
 , 241 (¶ 34) (Miss. 2014).
 

 Mary estimated additional expenses for the parties' children, but the chancery court ordered Jason to pay $3,200 per month in child support and maintain health and dental insurance for the children.
 

 Mary's available resources also include her own earning capacity. Mary did not work outside of the home during the marriage, she has limited work experience and no college degree or specialized training, and she is now a single mother to three children (ages fifteen, fourteen, and twelve at the time of the divorce). However, Mary was only forty years old at the time of the judgment, and the chancery court found that she is in good health. A vocational expert testified that, without additional training, Mary was qualified for positions that paid $8.85 to $12.68 per hour. He testified that, with additional training, she could earn more. The chancery court stated that the equalization payment and lump-sum alimony would "provide Mary with monthly income even if she decide[d] to remain at home." However, the chancery court did not make any findings as to the extent to which Mary could or should be expected to obtain employment at some point in the future.