GRIFFIS, J.,
 

 for the Court.
 

 ¶ 1. Charldrick Betts was indicted on three counts: Count I for possession of cocaine in an amount greater than 0.10 gram, Count II for possession of less than thirty grams of marijuana, and Count III for felony eluding of a police officer. Betts was convicted on Counts I and III, but the trial court declared a mistrial on Count II. On appeal, Betts argues that: (1) the trial court erred when it restricted his cross-
 
 *521
 
 examination; (2) the trial court erred in denying his motion for a directed verdict; and (3) the verdict was against the overwhelming weight of the evidence.
 

 FACTS
 

 ¶ 2. Chris Barnett and Nyle Calley, two police officers who worked for the Baldwin Police Department, set up a drivers’ license roadblock on Highway 370 West near Baldwin, Mississippi. A car driven by Betts ran the roadblock. Both Barnett and Calley pursued the vehicle in separate patrol cars and eventually forced Betts’s car down a dead-end street. Artravis Richey, the only passenger in Betts’s car, was arrested by Calley while in Betts’s car. Barnett arrested Betts after Betts attempted to escape on foot.
 

 ¶ 3. As of the date of the trial, Barnett and Calley no longer worked in law enforcement. During voir dire, the State made an oral motion in limine to exclude any mention of the fact that neither Barnett nor Calley currently worked for the Baldwin Police Department. Betts argued that he had a right to test the veracity of Barnett’s and Calle/s testimony if both of them “were terminated for dishonesty or not doing their job.” Betts’s attorney claimed that Barnett and Calley “were both terminated [because] they were both hanging around with people that were dealing drugs in the Baldwin area, [and] that sometimes they did, [and] sometimes they did not ... arrest these people.” The trial judge granted the State’s motion in limine because the judge found the proffered testimony to be irrelevant.
 

 ¶ 4. During the trial, Barnett testified that both he and Calley had their patrol lights turned on during the roadblock. He stated that Betts’s car approached the roadblock like it was going to stop and then sped through the roadblock. As Betts’s car passed through the roadblock, Barnett flashed his flashlight into Betts’s car and recognized Betts because Barnett is related to him. Barnett testified that during his pursuit he saw a brown bag that was later determined to contain marijuana being thrown out of the passenger side of Betts’s car. Barnett also testified that during the pursuit, Betts drove recklessly because he was doing over fifty miles-per-hour in a thirty-five miles-per-hour zone, and at one point, Betts drove on the wrong side of the road. He also stated that Betts drove on the shoulder of the road numerous times.
 

 ¶ 5. Barnett testified that, along with Calley, he pursued Betts’s car for about one-half of a mile before Betts stopped his car. Barnett arrested Betts after Betts tripped in a field while fleeing on foot. Barnett testified that he found a bag, which was later determined to contain cocaine, located on the ground next to Betts.
 

 ¶ 6. Calley corroborated most of Barnett’s testimony. However, Calley did not see anyone throw the bag filled with marijuana out of the car because Calley’s patrol car was behind Barnett’s patrol car during the pursuit. Furthermore, Calley did not see Barnett arrest Betts because he was arresting Richey.
 

 ¶ 7. Richey, Betts’s brother, testified for the defense. He stated that neither Barnett nor Calley had their patrol lights on during the roadblock and that each car was on the side of the road. He also stated that he did not see patrol lights until after Betts drove past the patrol cars. He further testified that he started throwing the marijuana and cocaine out of the car because the drugs belonged to him. He also stated that Betts did not know the drugs were in the car, that Barnett arrested him, and that Barnett got the cocaine off of Richey’s person. He further testified that the police pursuit did not last very long and that they were stopped in a
 
 *522
 
 fifty-five mile-per-hour zone. He said that Betts’s car was “broken” and would not go over fifty-five miles-per-hour. On cross-examination, Richey admitted that he was on probation for possession of cocaine before he and Betts were arrested.
 

 ANALYSIS
 

 I. Did the trial judge err when he did not allow Betts to question Barnett and Calley regarding their termination from the Baldwin Police Department?
 

 ¶ 8. This Court reviews a trial judge’s decision regarding the admissibility of evidence under an abuse of discretion standard of review.
 
 Edwards v. State,
 
 856 So.2d 587, 592(¶12) (Miss.Ct.App.2003). “As long as the trial court remains within the confines of the Mississippi Rules of Evidence, its decision to admit or exclude evidence will be accorded a high degree of deference.”
 
 Ellis v. Slate,
 
 856 So.2d 561, 565(¶ 9) (Miss.Ct.App.2003) (citation omitted).
 

 ¶ 9. Betts argues that the trial judge erred when the trial judge did not allow Betts’s attorney to ask Barnett and Calley questions regarding their termination with the Baldwin Police Department. Betts asserts that the trial judge’s decision violated Mississippi Rules of Evidence 404, 607, and 608. Furthermore, he argues that the trial judge’s decision violates the Confrontation Clause of the Sixth Amendment to the United States Constitution. The State counters by arguing that Betts’s argument was waived because Betts’s proffer never left the realm of speculation as to what the officers’ testimonies would be.
 

 ¶ 10. We do not find any merit in the State’s argument. The Mississippi Supreme Court has stated:
 

 It is not necessary that the parties place in the record every detail of what their proof would have shown. All we require is that the party offering the excluded testimony make a clear record showing to us that there is substance to his point, that on reversal and remand there is a substantial likelihood that he will be able to offer evidence which may reasonably be expected to have an impact on the outcome of the case. We do not require that the appealing party place in the record the total and complete details of the proffered but excluded testimony.
 

 Murray v. Payne,
 
 437 So.2d 47, 55 (Miss.1983). During the hearing on the State’s oral motion in limine, Betts’s attorney adequately explained what she believed the excluded testimony would show. Therefore, we do not accept the State’s argument regarding waiver, and we will analyze the substance of Betts’s claim.
 

 ¶11. In
 
 Ellis,
 
 856 So.2d at 565(¶ 9), we examined “[ujnder what circumstances [one may]
 
 cross-examine
 
 a witness under Rule 608(b)
 
 [1]
 
 about specific instances of past conduct not resulting in a conviction when the sole purpose of such line of questioning is to destroy the witness’s credibility for truthfulness[.]” (Footnote added). In
 
 Ellis,
 
 a criminal defendant argued that a trial judge erred when he excluded testimony that a witness for the State, a police officer, had a prior arrest for
 
 “allegedly accepting money
 
 
 *523
 
 from drug dealers.”
 
 Id.
 
 at 564-65(¶ 8) (emphasis added). We stated:
 

 The accused in a criminal trial has a fundamental right implicit in the confrontation clauses of our state and federal constitutions to cross-examine witnesses testifying against him. However, the rule does not allow cross-examination on any matter affecting the credibility of witnesses without restraint. The privilege only extends to any matter that is relevant. Accordingly, “the scope of cross-examination though ordinarily broad, is within the sound discretion of the trial court and the trial court possesses inherent power to limit cross-examination to relevant matters.”
 

 Id.
 
 565-66(¶ 10) (internal citations omitted). This Court agreed with the trial judge that the alleged bribery was irrelevant and held:
 

 The questions regarding [the police officer’s] alleged prior bad acts were too far removed to be relevant. There is a very distinct and substantive difference between alleged, unsubstantiated bad acts and prior bad acts.
 
 [The defendant] complains of not being alloiued to elicit testimony regarding bad acts with no attendant evidence to support its truth. The admission of such unfounded allegations rvould only cloud the minds of the jurors and would have no probative value.
 

 Id.
 
 at 566(¶ 12) (emphasis added). Like our decision in
 
 Ellis,
 
 we find that Betts desired to elicit testimony without any attendant evidence to support his allegations of prior bad acts. We do not find that the testimony was relevant under Mississippi Rule of Evidence 401 because Betts’s assertions are general in nature, and Betts’s attorney never established with certainty why the two officers in this case were terminated and what effect that has on this case.
 

 ¶ 12. Furthermore, we find this evidence inadmissible even if it was relevant because of the mandates of Mississippi Rule of Evidence 403. Rule 403 provides that: “Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury....” We find that the proffered testimony regarding the alleged bad acts of Barnett and .Calley do not pass the filter of Rule 403 because the probative value, which is based on speculation, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. Therefore, this issue is without merit.
 

 II. Did the trial court err in denying Betts’s motion for a directed verdict?
 

 ¶ 13. When reviewing a motion for a directed verdict, this Court looks to the sufficiency of the evidence.
 
 Gleeton v. State,
 
 716 So.2d 1083, 1087(¶ 14) (Miss. 1998). All of the evidence must be construed in the light most favorable to the prosecution.
 
 Id.
 
 The supreme court held:
 

 Should the facts and inferences considered in a challenge to the sufficiency of the evidence “point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,” the proper remedy is for the appellate court to reverse and render.
 

 Bush v. State,
 
 895 So.2d 836, 843(1116) (Miss.2005) (citing
 
 Edwards v. State,
 
 469 So.2d 68, 70 (Miss.1985)). However, if reasonable jurors could have reached different conclusions with respect to every element of the offense, the evidence will be considered sufficient.
 
 Id.
 
 The prosecution receives the benefit of all “favorable inferences that may be reasonably drawn from the evidence” when determining if the evi
 
 *524
 
 dence presented was sufficient to support the verdict.
 
 Smith v. State,
 
 839 So.2d 489, 495(¶ 12) (Miss.2003).
 

 ¶ 14. Betts argues that there was insufficient evidence regarding the charge of felony eluding of a police officer.
 
 [2]
 
 The elements of this crime are as follows:
 

 (1)
 
 The driver of a motor vehicle who is given a visible or audible signal by a law enforcement officer by hand, voice, emergency light or siren directing the driver to bring his motor vehicle to a stop when such signal is given by a law enforcement officer acting in the lawful performance of duty who has a reasonable suspicion to believe that the driver in question has committed a crime, and ruho willfully fails to obey such direction
 
 shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine not to exceed One Thousand Dollars ($1,000.00) or imprisoned in the county jail for a term not to exceed six (6) months, or both.
 

 (2) Any person who is guilty of violating subsection (1)
 
 of this section by operating a motor vehicle in such a manner as to indicate a reckless or willful disregard for the safety of persons or property, or who so operates a motor vehicle in a manner manifesting extreme indifference to the value of human life,
 
 shall be guilty of a felony, and upon conviction thereof, shall be punished by a fine not to exceed Five Thousand Dollars ($5,000.00), or by commitment to the custody of the Mississippi Department of Corrections for not more than five (5) years, or both.
 

 Miss.Code Ann. § 97-9-72(1) and (2) (Rev. 2006) (emphasis added).
 

 ¶ 15. Both Barnett and Calley testified that Betts drove through them roadblock without stopping and that they both ordered Betts to stop. They also both testified that Betts was speeding and that at one point during the pursuit Betts drove on the wrong side of the road. They stated that Betts was changing lanes and repeatedly driving on the shoulder of the road. They also stated that they had to force Betts onto a dead-end street in order to make Betts stop his car.
 

 ¶ 16. Richey testified that neither Barnett nor Calley had their lights on at the roadblock and that neither of them ordered Betts to stop when Betts drove past them patrol cars. He testified that the pursuit did not last very long and that Betts’s car could not go over fifty-five miles-per-hour. He also stated that Betts stopped his car in a fifty-five mile-per-hour zone.
 

 ¶ 17. The trial judge was presented with two different versions of what happened the night Barnett and Calley arrested Richey and Betts. Considering the evidence in the light most favorable to the State, we find that the trial judge was presented with evidence in which reasonable jurors could have reached different conclusions with regard to every element of the offense. Thus, we must affirm the trial judge’s decision to deny Betts’s motion for a directed verdict.
 

 III. Was the verdict against the overwhelming iveight of the evidence
 
 ?
 

 ¶ 18. After a thorough review of the record, we find that Betts did not file a motion for a new trial. We have previously stated:
 

 A claim that the verdict was against the weight of the evidence must be first presented to the trial court since that court is best positioned to make an informed decision as to such issue, having had the benefit of hearing the evidence
 
 *525
 
 first-hand. An appellate court’s role as to such a contention is limited to deciding whether the trial court, in denying a new trial motion, has abused the discretion afforded to that court in making such a determination. If the trial court is not permitted that opportunity through the timely filing of a post-verdict motion for new trial, there is no opportunity for the trial court to commit the error that must necessarily precede the intervention of the appellate court.
 

 Collins v. State,
 
 858 So.2d 217, 218-19(¶ 5) (Miss.Ct.App.2003) (internal citations omitted). In
 
 Collins,
 
 we held that Collins’s argument regarding the weight of the evidence was proeedurally barred because Collins did not move for a new trial.
 
 Id.
 
 at 219(116). Like
 
 Collins,
 
 we find that Betts’s assignment of error regarding the weight of the evidence is proeedurally barred because he did not file a motion for a new trial.
 

 ¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY OF CONVICTION OF COUNT I, POSSESSION OF COCAINE GREATER THAN 0.10 GRAM, AND SENTENCE OF EIGHT YEARS, AND COUNT III, FELONY ELUDING OF A POLICE OFFICER, AND SENTENCE OF FIVE YEARS, WITH THREE YEARS SUSPENDED, TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY A FINE OF $3,000, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEE COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, BARNES, ISHEE, ROBERTS AND CARLTON, JJ„ CONCUR.
 

 [1]
 

 . This rule states: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the. discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness....” M.R.E. 608(b).
 

 [2]
 

 . Betts does not challenge the sufficiency of the evidence regarding his conviction for possession of cocaine. Instead, he appears to challenge die weight of the evidence, and this will be addressed in issue III.