# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-01829-COA

**DERRICK JOHNSON**                                                          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                     **APPELLEE**

DATE OF JUDGMENT:              04/10/2013
TRIAL JUDGE:                  HON. WINSTON L. KIDD
COURT FROM WHICH APPEALED:    HINDS COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       OFFICE OF STATE PUBLIC DEFENDER
                              BY: W. DANIEL HINCHCLIFF
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                              BY: LADONNA C. HOLLAND
DISTRICT ATTORNEY:            ROBERT SHULER SMITH
NATURE OF THE CASE:           CRIMINAL - FELONY
TRIAL COURT DISPOSITION:      CONVICTED OF CAPITAL MURDER AND
                              SENTENCED TO LIFE WITHOUT PAROLE
                              IN THE CUSTODY OF THE MISSISSIPPI
                              DEPARTMENT OF CORRECTIONS
DISPOSITION:                  AFFIRMED - 03/29/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., FAIR AND WILSON, JJ.**

**WILSON, J., FOR THE COURT:**

¶1.     Derrick Johnson confessed to killing a security guard during a gas station robbery. The audiotape of his confession and his handwritten statement were admitted into evidence at trial, and the jury convicted him of capital murder. On appeal, Johnson argues that the trial judge erred by refusing to allow him to cross-examine a former Jackson Police Department (JPD) detective—one of two detectives to whom he confessed—about allegations that the

detective had accepted bribes in unrelated cases. We conclude that the trial judge did not abuse his discretion. We therefore affirm Johnson's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2. On July 26, 2011, around 2:30 a.m., two masked men entered the Shell station at the corner of Fortification Street and Jefferson Street in Jackson. One of the men pointed a gun at the store clerk, Suvin Shrestha, and demanded money. Shrestha opened the cash register, and the other man tried to grab money from the register. While the robbery was in progress, Tyrone McKinney, the store's security guard, entered from a door behind the cash register. McKinney reached for a revolver that was kept under the cash register, and McKinney and the armed robber then exchanged fire. McKinney was shot twice in the chest and died at the scene. Shrestha was shot once in the leg. The robbers fled. Surveillance video showed them leaving in a dark colored Chevrolet Caprice with a white hood driven by a third man.

¶3. On July 29, 2011, JPD questioned Derrick Johnson as a suspect in the murder. JPD Detective Eric Smith read Johnson his rights, and Johnson signed a *Miranda*[1] waiver form confirming that he wanted to make a statement without a lawyer present. Detective Smith and JPD Detective William Waples then conducted a thirty-one minute interview with Johnson. Detective Smith was the primary questioner. During the interview, Johnson confessed that he was the shooter. Johnson claimed that during a night of drinking, his two accomplices, Kameron Woodard and Aaron McNair, talked him into taking part in the robbery. Johnson claimed that he did not intend to kill anyone but "panicked." Johnson also

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

wrote out and signed a statement confessing that he was the shooter. Finally, he signed a still photo of the robbery with the handwritten notation "me in the gray shirt" (i.e., the shooter).

¶4. Johnson was indicted for capital murder and aggravated assault. Prior to trial, Johnson moved to suppress his confession, alleging that he was legally intoxicated at the time. Detective Smith died prior to Johnson's trial, so only Waples testified at the suppression hearing. Waples testified that Johnson did not show any signs of intoxication during the interview. Johnson's speech was not slurred, his eyes were not glassy or watery, he was steady on his feet, and he had no difficulty signing his *Miranda* waiver form or writing out his statement. The court listened to the tape, found that Johnson's statements were voluntarily given, and denied Johnson's motion to suppress. Johnson does not challenge this ruling on appeal.

¶5. In another pretrial motion, the State moved to preclude Johnson from cross-examining Waples about the circumstances of his departure from JPD. Waples resigned from JPD in September 2012, and at the time of trial he was employed as the captain of campus police at Hinds Community College. Waples testified during the suppression hearing that prior to his resignation, JPD informed him that he had been accused of taking bribes and that he was being reassigned. Waples testified that he resigned from JPD because he did not want to be reassigned. He also testified that the district attorney wanted to meet with him to discuss an unspecified "investigation." Waples assumed that the investigation related to the bribery accusations, but he did not know that, and he had not met with the district attorney at the time of trial. Waples had not been arrested, charged with any crime, or received any kind of

document setting out any allegations against him. The court concluded that the possible bribery allegations were not related to Waples's testimony about Johnson's confession and granted the State's motion in limine.

¶6. At trial, Waples authenticated the audiotape of Johnson's confession, Johnson's handwritten statement, the photo of the robbery with Johnson's handwritten annotation, and Johnson's *Miranda* waiver. He testified that Johnson was not threatened, coerced, or promised anything. He was not asked and did not testify as to whether Johnson was intoxicated at the time of his interview.

¶7. Shrestha, other JPD officers, and the medical examiner also testified at trial, but the primary evidence against Johnson was his own confession and handwritten statements. The jury convicted Johnson of capital murder.[2] The court subsequently sentenced Johnson to life in the custody of the Mississippi Department of Corrections without the possibility of parole, and Johnson appealed.

## DISCUSSION

¶8. As noted above, Johnson raises a single issue on appeal: whether he should have been allowed to cross-examine Waples about accusations that Waples had taken bribes while he was a JPD officer. "The admissibility and relevancy of evidence is within the discretion of the trial court and, absent an abuse of that discretion, the trial court's decision will not be disturbed on appeal." *Ellis v. State*, 856 So. 2d 561, 565 (¶9) (Miss. Ct. App. 2003) (citing

---

[2] The jury acquitted Johnson of aggravated assault on Shrestha. In his closing argument, Johnson's attorney argued that McKinney might have unintentionally shot Shrestha in the leg.

4

*Reynolds v. State*, 784 So. 2d 929, 932 (¶7) (Miss. 2001)). "As long as the trial court remains within the confines of the Mississippi Rules of Evidence, its decision to admit or exclude evidence will be accorded a high degree of deference." *Id.* (quoting *Johnston v. State*, 567 So. 2d 237, 238 (Miss. 1990)). Moreover, although "cross-examination is ordinarily broad in scope, it is within the sound discretion and inherent power of the circuit judge to limit cross-examination to only relevant matters." *Timmons v. State*, 44 So. 3d 1021, 1026 (¶17) (Miss. Ct. App. 2010). "Additionally, 'the admission or exclusion of evidence must result in prejudice or harm, if a cause is to be reversed on that account.'" *Ellis*, 856 So. 2d at 565 (¶9) (quoting *Jackson v. State*, 594 So. 2d 20, 25 (Miss. 1992)).

¶9. Johnson's argument in this case tracks the claim that we addressed in *Ellis*. There, a detective testified that Ellis confessed to being involved in a murder, and Ellis sought to cross-examine the detective about bribery allegations against him. *Id.* at 564 (¶¶5-6). The detective "had been arrested on a bribery charge for allegedly taking money from alleged drug dealers," but he "was never indicted" and subsequently "resigned from his position as detective, according to him, for other reasons." *Id.* at (¶6). We recognized that the question whether Ellis was entitled to cross-examine the detective regarding the bribery allegations was governed primarily by Mississippi Rule of Evidence 608(b), which provides in relevant part that specific instances of conduct of a witness "*may . . . , in the discretion of the court*, if probative of [the witness's] truthfulness or untruthfulness, be inquired into on cross-examination of the witness." M.R.E. 608(b) (emphasis added). We stated that if a party desires to cross-examine a witness regarding such conduct, the trial judge should "determine

first if the conduct reflects upon the witness's honesty, and if so, weigh the probative value against the danger of unfair prejudice, as required under Rule 403 and also determine whether admission of the evidence will advance the ascertainment of the truth in the case." *Ellis*, 856 So. 2d at 565 (¶9) (citing *Brent v. State*, 632 So. 2d 936, 944 (Miss. 1994)). We further stated that such issues of "relevancy and admissibility" are "largely within the discretion of the trial court." *Id.* (quoting *Peterson v. State*, 671 So. 2d 647, 658 (Miss. 1996)). And, finally, we reasoned that the defendant's constitutional right to cross-examine witnesses "does not allow cross-examination on any matter affecting the credibility of witnesses without restraint" but "only extends to any matter that is relevant." *Id.* at (¶10).

¶10.    Applying these principles, we held that the trial judge did not abuse his discretion by precluding cross-examination of the detective regarding the bribery allegations. We noted that the trial judge found that the allegations against the detective were "irrelevant to his character and truthfulness on the matter before the court," and we agreed that

> [t]he questions regarding [the detective's] alleged prior bad acts were too far removed to be relevant. There is a very distinct and substantive difference between alleged, unsubstantiated bad acts and prior bad acts. Ellis complains of not being allowed to elicit testimony regarding bad acts with no attendant evidence to support its truth. The admission of such unfounded allegations would only cloud the minds of the jurors and would have no probative value.

*Id.* at 566 (¶¶11-12); *accord Betts v. State*, 10 So. 3d 519, 521-23 (¶¶3, 9-12) (Miss. Ct. App. 2009).

¶11.    This case also implicates a "very distinct and substantive difference between alleged, unsubstantiated bad acts and prior bad acts." *Ellis*, 856 So. 2d at 566 (¶12). Whereas the detective in *Ellis* had at least been arrested on a bribery charge, Waples had never been

6

arrested or the subject of any formal charge. All that could be shown was that someone had accused him of accepting a bribe. The trial court did not abuse its discretion by excluding such unsubstantiated allegations, which could "only cloud the minds of jurors and . . . have no probative value." *Id.*

¶12. Further, as in *Ellis*, the trial judge in this case did not abuse his discretion in finding that the possible investigation of Waples for bribery was irrelevant to his testimony at trial. At trial, Waples's testimony served primarily to authenticate the audiotape of Johnson's interview and other exhibits. Waples testified briefly that Johnson was not threatened, coerced, or promised anything before or during the interview, and there is no evidence or argument to the contrary. At trial, Waples was not asked and did not testify as to whether Johnson appeared intoxicated during the interview. In his closing argument, Johnson's attorney argued that Johnson's own statements in the interview showed that he was intoxicated, and the jury was free to listen to the interview and evaluate that argument. However, there is no logical reason that the jury would have given less weight to Johnson's own recorded and handwritten confessions had they been made aware that someone apparently accused Waples of bribery in some unrelated case.

¶13. In summary, *Ellis* is not meaningfully distinguishable from the present case, so the result is the same. The trial judge did not abuse his discretion by precluding Johnson from questioning Waples concerning possible allegations of bribery that had nothing to do with Waples's testimony in this case. Johnson's conviction and sentence are therefore affirmed.

¶14. **THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE WITHOUT**

**THE POSSIBILITY OF PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, JAMES AND GREENLEE, JJ., CONCUR.**