# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00793-COA

**DEREK ROWELL A/K/A DEREK ROCK ROWELL**                APPELLANT

**v.**

**STATE OF MISSISSIPPI**                                        APPELLEE

DATE OF JUDGMENT:              06/16/2021
TRIAL JUDGE:                  HON. JON MARK WEATHERS
COURT FROM WHICH APPEALED:    FORREST COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       OFFICE OF STATE PUBLIC DEFENDER
                              BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                              BY: ALEXANDRA RODU ROSENBLATT
NATURE OF THE CASE:           CRIMINAL - FELONY
DISPOSITION:                  AFFIRMED - 09/13/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE WILSON, P.J., McCARTY AND SMITH, JJ.

### McCARTY, J., FOR THE COURT:

¶1.    A driver led police officers on a high-speed chase.  After he was caught, he was arrested and charged with felony eluding.  A jury found him guilty.  Finding no error, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2.    One day in 2019, Perry County sheriff's deputies requested assistance from Forrest County sheriff's deputies in stopping a white Infiniti.  The car was being driven from Perry County into Forrest County on U.S. Highway 98.  Then, Forrest County Sheriff's Deputy Daniel Benoit spotted the car traveling on Highway 98 "going very fast."  Deputy Benoit

testified he did not have a radar to detect the car's speed. From his training, he believed the car was going about 100 miles per hour.

¶3. The deputy tried to follow the white Infiniti. The car turned off Highway 98 onto Highway 49. The deputy turned on his blue lights and siren and pursued the Infiniti. Nevertheless, the car did not stop. He stated that during the high-speed chase, other cars were driving on the same road.

¶4. Benoit testified even though he was going "in excess of 125 miles an hour" during the pursuit, he did not come closer than a quarter mile of the white Infiniti.

¶5. Then the white Infiniti turned off Highway 49 onto a service road. There was a stop sign at the service road, but the car's driver ran the stop sign and turned right. Then the driver blew through a second stop. After the Infiniti entered a residential area, the deputy lost the car.

¶6. The deputy radioed in where he thought the car was headed. Shortly after, a Perry County deputy stopped the white Infiniti. There were two people inside—Derek Rowell and a woman.

¶7. Both Rowell and the woman were arrested and given their *Miranda* rights. The deputy stated the woman was in the driver's seat when he pulled over the car. But Rowell admitted to law enforcement the pair had "swapped drivers." At some point, "she began driving the car and became scared after [the deputy] got behind her and pulled over."

¶8. Prior to trial, counsel for Rowell filed a motion to suppress admissions his client made in a parole revocation hearing. While the transcript of the revocation hearing is not in the

2

record, it apparently was in the possession of Rowell's trial counsel, who sought to exclude two statements his client had made during the hearing.

¶9. First, Rowell wanted to prohibit his admission that he "did see the blue lights but wasn't sure they were behind [him]." Second, Rowell's attorney argued a jury should not hear that his client testified, "[W]hen [the deputy] questioned me on whether or not I was driving, I told him from the get-go that I was." The trial court denied the motion to suppress because Rowell was under oath when he made the statements.

¶10. Rowell's admissions from his revocation hearing were admitted. Rowell presented no evidence and did not testify. At the end of trial, Rowell proposed a jury instruction for the lesser-included offense of misdemeanor eluding. The trial court refused Rowell's proposed instruction, reasoning that "no rational jury could find Mr. Rowell guilty of the lesser-included offense" because it lacked a factual basis.

¶11. Rowell was convicted of felony eluding and sentenced to serve five years in the custody of the Mississippi Department of Corrections. He now appeals.

**DISCUSSION**

I.      **The trial court did not err by refusing to instruct the jury on a lesser-included offense.**

¶12. Rowell argues he was entitled to a jury instruction on the lesser-included offense of "failure to stop pursuant to signal of a law enforcement officer" because the State could not prove each element of felony eluding.

¶13. "The standard of review for a claim that a defendant was entitled to a lesser-included-offense instruction is de novo, as this is a question of law." *Pierce v. State*, 107 So. 3d 1011,

3

1014 (¶11) (Miss. Ct. App. 2012).

¶14. "To be entitled to a lesser-included-offense instruction, a defendant must point to some evidence in the record from which a jury reasonably could find him not guilty of the crime with which he was charged and at the same time find him guilty of a lesser-included offense." *Gilmore v. State*, 119 So. 3d 278, 286 (¶13) (Miss. 2013).

¶15. To commit felony eluding, a driver must have first committed the misdemeanor of "Failure to Stop":

> (1) The driver of a motor vehicle who is given a visible or audible signal by a law enforcement officer by hand, voice, emergency light or siren directing the driver to bring his motor vehicle to a stop when such signal is given by a law enforcement officer acting in the lawful performance of duty who has a reasonable suspicion to believe that the driver in question has committed a crime, and who willfully fails to obey such direction shall be guilty of a misdemeanor . . . .

Miss. Code Ann. § 97-9-72(1) (Rev. 2014).

¶16. The second part of the statute requires that a person must first be found "guilty of violating subsection (1)." It then adds an element, requiring proof that a person either "operat[ed] a motor vehicle in such a manner as to indicate a reckless or willful disregard for the safety of persons or property, or . . . operate[d] a motor vehicle in a manner manifesting extreme indifference to the value of human life." Miss. Code Ann. § 97-9-72(2).

¶17. In one felony-eluding case, a man sped through a roadblock. *Betts v. State*, 10 So. 3d 519, 521 (¶4) (Miss. Ct. App. 2009). The officers testified they had their patrol lights turned on during the roadblock, but the car continued speeding. *Id*. The officers chased the car and said at some point the car was on the wrong side of the road. *Id*. One officer testified the

4

defendant drove recklessly because he was doing over 50 miles per hour in a 35 miles-per-hour zone. *Id*. The officers chased the car for about a half mile before finally stopping it. *Id*. We held this was sufficient proof to affirm the conviction for felony eluding. *Id*. at 524 (¶17).

¶18. Like in *Betts*, Rowell was "given a visible or audible signal" as required by the statute. Yet he refused to stop. During the chase, he failed to stop at two stop signs. Deputy Benoit estimated Rowell drove roughly 100 in a 65 miles-per-hour zone during the chase—driving 35 miles per hour over the posted speed limit. The deputy also testified that during the chase, other cars were on the road. Further, Rowell drove through a residential area and "really close" to several businesses. As in *Betts*, where the court relied on the officer's testimony that the defendant drove approximately 15 miles per hour over the speed limit, *id*. at 521, 524 (¶¶4, 15, 17), this evidence is sufficient to find that Rowell drove recklessly. Based upon the evidence presented by the State, no reasonable juror could have found Rowell not guilty of felony eluding but guilty of the lesser-included offense.

¶19. Rowell further argues the State could not establish he drove the Infiniti in such a manner as to indicate a reckless or willful disregard for the safety of person or property. Specifically, he argues the State presented no evidence that he put people in danger from his driving.

¶20. But that is not the law. The same point was argued in an appeal from a conviction of reckless driving, where the defendant "contend[ed] that there was a lack of evidence of other cars or people on the highway that could have been endangered by his driving." *Ouzts v.*

*State*, 947 So. 2d 1005, 1007 (¶15) (Miss. Ct. App. 2006). Similar to the felony eluding statute, the reckless driving statute prohibited "driv[ing] any vehicle in such a manner as to indicate either a wilful or a wanton disregard for the safety of persons or property[.]" Miss. Code Ann. § 63-3-1201 (Rev. 2004); Miss. Code Ann. § 97-9-72(2) (criminalizing "operating a motor vehicle in such a manner as to indicate a reckless or willful disregard for the safety of persons or property").

¶21.    Relying on well-established Supreme Court precedent, we explained "the terms 'safety of persons or property' applied not only to the public, but to the defendant as well." *Ouzts*, 947 So. 2d at 1007 (¶14) (citing *Barnes v. State*, 249 Miss. 482, 484, 162 So. 2d 865, 866 (1964)). We ultimately held that "[a] conviction for reckless driving does not require that the actions of the defendant pose a danger to another person or another's property," but also could be "that the defendant's actions pose a danger to himself or his property." In affirming, we found that Ouzts did not just pose a "danger to himself and his property through his actions," but also risked the safety of law enforcement. *Id*. at (¶15).

¶22.    Just as we decided in that case, here there was sufficient proof presented to the jury that Rowell not only posed a danger to himself and the car he was driving, but also other people. During the chase, Deputy Benoit drove about 125 miles per hour trying to catch Rowell. The deputy estimated that during the chase, Rowell drove approximately 100 miles per hour while other cars drove on the road. He also testified the chase took place close to businesses and, at some point, through a residential area. This is sufficient evidence Rowell drove recklessly.

6

¶23. Rowell argues in the alternative the State could not prove he willfully failed to stop. However, because willfulness is an element of *both* felony eluding and the lesser-included offense, no reasonable juror could acquit Rowell of felony eluding but convict him of a misdemeanor based on his argument. A factual question related to willfulness might be a basis for an outright acquittal, but it would not entitle him to a lesser-included-offense instruction.

¶24. Nonetheless, our caselaw has established that seeing blue lights is a component of proof for felony eluding, and Rowell admitted he saw the officer's blue lights. *See Grace v. State*, 281 So. 3d 986, 992 (¶17) (Miss. Ct. App. 2019) (affirming a conviction of felony eluding where the defendant sped up when he saw a police officer's blue lights). The jury concluded Rowell continued speeding and ran two stop signs despite seeing the deputy's signal to stop.

¶25. Therefore, Rowell was not entitled to a jury instruction of a lesser-included offense.

**II. The evidence supported Rowell's conviction.**

¶26. Rowell argues both the sufficiency and weight of the evidence are lacking, requiring reversal.

¶27. "In evaluating the legal sufficiency of the evidence, the critical inquiry is whether the evidence shows beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed." *Jones v. State*, 326 So. 3d 521, 529 (¶45) (Miss. Ct. App. 2021). "Under this inquiry, all evidence supporting the guilty verdict is accepted as true, and the State must be given the benefit of

all reasonable inferences that can be drawn from the evidence." *Id*. "If any rational trier of fact could have found each and every one of the elements of the crime beyond a reasonable doubt, when viewing the evidence in the light most favorable to the prosecution, the verdict must stand." *Id*.

¶28. The jury was presented with testimony from two officers. One deputy testified he saw the white Infiniti traveling well over the 65 miles-per-hour speed limit. He testified he turned on his lights and siren to signal the car's driver to stop. Rowell admitted he saw the lights but did not stop. Benoit testified he reached 125 miles per hour in his cruiser trying to catch Rowell and estimated Rowell drove about 100 miles per hour during the chase. The jury also heard that Rowell had admitted he was the driver during the chase. Viewing the evidence in the light most favorable to the State, we find there was sufficient evidence for a reasonable jury to find Rowell guilty of felony eluding.

¶29. Rowell also argues the verdict was against the overwhelming weight of the evidence.

¶30. "A challenge to the weight of the evidence is separate and distinct from a challenge to the legal sufficiency of the evidence in that it seeks a new trial." *Dehart v. State*, 290 So. 3d 373, 376 (¶16) (Miss. Ct. App. 2020). "[O]nly in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal." *Green v. State*, 312 So. 3d 1214, 1217-18 (¶17) (Miss. Ct. App. 2021). Critically, "issues of weight and credibility of witness testimony are within the sole province of the jury as a fact finder." *Id*. at (¶18) (internal quotation marks omitted). "As an appellate court, we are not permitted to sit as the

8

thirteenth juror and assume the role of juror on appeal." *Id*. (internal quotation marks omitted).

¶31.    Rowell argues the evidence against him was outweighed by evidence to the contrary. But there was *no* evidence presented that controverted the State's proof. We find the verdict was not against the overwhelming weight of the evidence.

### III.    Rowell's argument that his testimony made during the revocation hearing should not have been admitted is procedurally barred.

¶32.    Rowell argues his testimony made during his revocation hearing should not have been admitted. He argues the jury should not have heard that he "did see the blue lights but wasn't sure they were behind [him]" or that he told the officers he had driven the white Infiniti "from the get-go."

¶33.    "The standard of review for admission of evidence is abuse of discretion." *Jones v. State*, 303 So. 3d 734, 736 (¶6) (Miss. 2020). "However, when a question of law is raised, the applicable standard of review is de novo." *Id*. at 737 (¶6).

¶34.    Rowell claims he was forced between a rock and a hard place in choosing between testifying and invoking his constitutional right not to be a witness against himself. Yet the revocation transcript was not included in the record before this Court, and Rowell did not seek to include it.

¶35.    "It is the duty of the appellant to provide the record of the trial proceedings wherein the error claimed is brought before this Court." *G.R. v. Miss. Dep't Hum. Servs.* (*In re V.R.*), 725 So. 2d 241, 245 (¶16) (Miss. 1998); *see* MRAP 28(a)(7) (requiring parties to cite to the "parts of the record relied on"). "The appellants have the burden of ensuring the record

9

contains all facts necessary to the determination of the matters appealed." *In re V.R.*, 725 So. 2d at 245 (¶16).

¶36.   And our Rules of Appellate Procedure require that "if the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion." MRAP 10(b)(2).   Ultimately, "[i]t is well settled that a reviewing court cannot consider matters which do not appear in the record and must limit itself to the facts that do appear in the record." *In re V.R.*, 725 So. 2d at 245 (¶16).

¶37.   Rowell argues the trial court failed to find the admissions were freely and voluntarily made because the court did not consider the entire trial transcript.   However, the revocation transcript is not in the record.   Without the record before this Court, we decline to rule on this point.

¶38.   Even if the revocation transcript were in the record, the Mississippi Rules of Criminal Procedure expressly allow the use of statements made during a revocation to be used later in a criminal trial.   Under the rules, "any statement made by the probationer at the present proceeding may be used against the probationer at a subsequent proceeding or trial." MRCrP 27.3(e)(4).   To the extent counsel for Rowell addressed the transcript of the revocation during the suppression hearing, he conceded Rowell was warned the State could use his admissions during trial.

¶39.   Given the Rule considers this exact scenario, it would not have been an abuse of discretion for the trial court to allow the jury to hear the two statements.   However, because

Rowell did not include the transcript from the revocation hearing in the record, we decline to rule on this issue.

## CONCLUSION

¶40.     We find Rowell was not entitled to a jury instruction on a lesser-included offense. Further, we find the evidence supported Rowell's conviction. Finally, because Rowell did not include the transcript from his revocation hearing in the record, we find this issue is procedurally barred.

¶41.     **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR.  WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**