371 So.2d 411 (1979)
James Lamar WALLS
v.
STATE of Mississippi.
No. 51243.
Supreme Court of Mississippi.
May 30, 1979.
Farese, Farese & Farese, Anthony T. Farese, Ashland, for appellant.
A.F. Summer, Atty. Gen., by Wayne Snuggs, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and BROOM and BOWLING, JJ.
BROOM, Justice, for the Court:
Murder conviction (and life imprisonment sentence) resulted from James Lamar Walls' trial in the Circuit Court of Lee County, Mississippi. Appealing here, Walls argues that one of the jurors should have been replaced because of information revealed after both the prosecution and defense accepted her. We reverse.
Walls was tried in December 1977 for murdering Glen Ford on October 16, 1976. That night, Walls and his female companion, Shirley Ann Pennington, were at Bill's Lounge in Tupelo, where the deceased, Glen Ford, along with his wife and other friends, was also present. Both men danced with their ladies. After a while, Walls and Pennington left the lounge and went to Walls' truck in the parking lot. They were still there when the deceased, Glen Ford, and his party emerged from the lounge, got in Ford's automobile and drove across the parking lot to a place directly behind Walls' truck. Janice Ford (who identified herself as the deceased's wife), testified that she remarked to Ford as they started to leave the parking lot: "It looks like Lamar is stuck." Her testimony was that her husband, thinking Walls was stuck, drove over to Walls' truck and offered to help him, whereupon Walls displayed a gun. When Ford asked him what he was doing with the *412 gun, Walls replied: "It's to kill you, if I have to." Ford then turned around and was walking away from Walls when Walls fatally shot him in the back for no reason whatever. It is uncontested that Ford was unarmed.
The state's case summarized above was accepted by the jury even though Walls testified that he killed Ford in self-defense after Ford had beaten him up on previous occasions. According to Walls, Ford threatened to kill him while they were inside the lounge and later out on the parking lot where he again cursed Walls and threatened to kill him.
Several of the arguments advanced by Walls deal with the sufficiency of the evidence. Suffice it to say that the jury, upon conflicting evidence, accepted the state's case, and we reject Walls' assertion that the evidence failed to support the verdict of guilty.
Walls cogently argues that the trial court erred in allowing one Mrs. Christian to serve as a juror after it was disclosed that her son had been the recent victim of a homicide in Tennessee, his killer soon to be tried. After twelve jurors (including Mrs. Christian, and two alternates) had been selected to try the case, the following events transpired concerning Mrs. Christian:
(At this time there was conference at the bench between all counsel and the Judge. Judge Biggers retired to Chambers, along with the Official Reporter and Deputy Blake and a female member of the jury in this cause, and the following was had).
BY JUDGE BIGGERS: I understand that your son was killed in Memphis sometime ago.
BY THE JUROR: Back in June, Yes, sir.
BY JUDGE BIGGERS: The trial is coming up next week?
BY THE JUROR: No, sir, sometime in January.
BY JUDGE BIGGERS: All right. Well, the only thing I know is, you have answered the question whether or not you can be objective about this case, is there any doubt in your mind as to whether or not that is true?
BY THE JUROR: None whatsoever or I would have said so. I feel I can give my honest opinion. It won't influence me that way. If you had rather I wouldn't serve, I will be glad not to.
BY JUDGE BIGGERS: I take you at your word, believe me.
(At this time, counsel for both sides were called into Chambers, and the following was had, with the Bailiff and the juror, the Court reporter, the Judge and counsel present).
Then in the presence of counsel for both sides, Mrs. Christian, the female juror, again indicated that she could serve as a juror and would not be influenced by her feelings about her son having been killed by another, with the trial to be some few weeks later. Counsel for the defendant then moved the court:
[T]o dismiss Mrs. Christian from the jury for the reason that regardless of what she has said, we think it would be humanly impossible to separate her emotional involvement in the trial of a person accused of murdering her son from this case which is a murder case. And the Defendant, we think, is entitled to a jury of twelve people who are not involved by personal emotional involvement in things of this matter, so we would request the Court, and so move that this lady, since the trial has not gotten underway, be excused and, since two alternates were chosen, that the first alternate be put in her place. Just for the record, I would like to state that this lady didn't answer any questioning on Voir Dire indicating that she was involved in this trial of someone accused of murdering her son, and neither one of the attorneys was informed of the fact until after the jury was selected and all challenges had been made, and we understand that the Court was aware of this fact prior to the jury selection, and for those reasons we ask the Court to excuse her.
We have previously held that whether a prospective juror is fair and impartial and qualified to sit as a member of a *413 trial jury is a judicial question. No general rule can be stated which would control every conceivable situation with respect to a juror's qualifications. Each case must be decided on its own merits in light of the facts before the court. Odom v. State, 355 So.2d 1381 (Miss. 1978). Here it is admitted that the trial judge learned on a prior day of the term that the juror, Mrs. Christian, had a son who was a recent homicide victim in Tennessee, and that the trial on account of the homicide would be commenced within a few weeks. Such facts (known to the judge) were unknown to the defense until after twelve jurors and two alternates were selected and empanelled. It is true that counsel could have elicited these peculiar facts by inquiring during his voir dire if a juror or juror's child had ever been involved in a homicide but we do not think failure to ask such a question upon this record operated so as to waive the defendant's right to have the juror in question excused. Indeed, it is a rarity that a juror will have a child or other relative lose his life in a homicide, with a trial for the homicide soon to follow the present trial.
In the instant case, defense counsel, we think, should have been granted his request that Mrs. Christian (who had volunteered to step down) be excused and replaced by some other juror. In Dase v. State, 356 So.2d 1179 (Miss. 1978), a prospective juror on voir dire examination was asked a question which called upon the juror to reveal the fact that the juror's son had been fatally stabbed a few weeks prior to Dase's trial. The juror, however, failed to respond with any revelation about the stabbing, and, in ordering reversal, Justice Walker, writing for the Court, stated:
We find it impossible to believe that the juror could have forgotten so shocking an event as her son's violent death in a month's time... . (356 So.2d at 1182).
In commendable honesty, candor, and forthright frankness, the trial judge in the instant case made the facts of the homicide regarding Mrs. Christian's son a matter of record, and fully advised all of the attorneys about the unique situation.
One of the purposes of having alternate jurors is to be able to fill the gap created by some contingency such as occurred here, where an alternate could have replaced Mrs. Christian without any delay of the trial, and without prejudice to either side. We conclude that a conviction cannot be allowed to stand where, as in the present case, the defense was compelled to proceed with the case, confronted by a juror whose son had recently been the victim of a homicide for which a trial was soon to transpire. Although we are reluctant to set aside the jury verdict, fairness and justice require reversal and a new trial.
Other assignments of error, relating mainly to procedural and post-trial matters, we find to be without merit.
REVERSED AND REMANDED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, LEE, BOWLING and COFER, JJ., concur.