BARNES, J.,
for the Court:
¶ 1. Willie Mack Pierce, Jr. was convicted in the Jefferson Davis County Circuit Court of murdering his brother-in-law and was sentenced to life imprisonment. After denial of his post-trial motions, Pierce filed this appeal. Finding no reversible error, we affirm his conviction and sentence.
FACTS AND PROCEDURAL HISTORY
¶ 2. The evidence leaves no doubt that Silas Upton Jr. was shot and killed by a shotgun blast to the chest at close range as he sat in his lounge chair at home. Pierce did not testify in his own defense, but it was generally agreed that there was no animosity between Upton and Pierce. Although he did not confess to killing Upton, Pierce told his family and friends that he “had killed an innocent man” and “was in the wrong.” The forensic evidence shows that Upton was killed by three pellets from a shotgun; Pierce had a 12-gauge shotgun and shells with him when he was arrested.
¶ 8. Upton was married to Nita Upton, who was the twin sister of Pierce’s wife, Meta Pierce. There apparently were problems in the Pierce marriage, as Meta had moved her belongings to the Upton home about eight miles outside of Prentiss, Mississippi. Meta had been staying with the Uptons for about a week prior to the shooting. On August 11, 2007, Pierce showed up at the Upton home. The two sisters were not at home, as they had gone shopping at Walmart in Columbia until about 6 p.m. When they returned, they found all the doors locked. Neither sister had a key. Nita testified that she went around the home and looked into the den window. She said all the lights were out, but by the light of the television, she saw her husband lying flat in his recliner with one foot in the chair and the other on the floor. She called to him, but he did not move. She then walked to her son Charles Upton’s home nearby and got him to come unlock the door. Charles opened the door and went into the living room, where he found his father in the lounge chair. He was not moving, and Charles thought he was sleeping, that is, until Charles saw “blood all over the floor” and on his father’s chest, and observed his father was not breathing. Meta called 911. The three then waited outside for the police to arrive.
¶ 4. Darryl Perkins of the Mississippi State Highway Patrol responded to the call at 10:30 p.m. Local law enforcement personnel were already at the scene and *1013 had developed Pierce as the prime suspect. Pierce was not at his home. Upton’s house, truck, and shop keys were missing, along with his truck.
¶ 5. To assist in locating Pierce, the authorities had Pierce’s younger brother, Gary, call Pierce on his cell phone. Gary talked to Pierce several times, and the thrust of their conversations was that Pierce had received a “Dear John” letter from Meta that “had messed his mind up.” Pierce told Gary that he had gone to Upton’s house to commit suicide in front of his wife. He told Gary that when he had seen Meta’s car at the Uptons, he had gotten mad because he did not want the sisters together. Gary said his brother told him he had gotten madder when he entered the Upton’s home and found Meta’s belongings there. Pierce said that he and Upton “had words and he shot the man.” Gary said Pierce told him that after he had shot Upton, he went to the hospital where Meta worked as a nurse and waited for her.
¶ 6. While he was being sought by authorities, Pierce visited two friends in the area. Judy Speights of Silver Creek, Mississippi, testified that she, Pierce, and her husband had all been in rehab together and were “very good friends.” Pierce walked into her yard and told her there had been an accident in which he had shot his brother-in-law. Speights said that Pierce did not tell her about any words or fighting between Upton and himself. Pierce had brought Speights and her husband a handwritten will, which they witnessed. During their conversation, Pierce told Speights that he had shot the man with a 12-gauge shotgun. Pierce left driving a new model black Nissan Frontier rather than the older model truck he usually drove.
¶ 7. Upton’s house, truck, and shop keys were later recovered in his truck, which the police found in Hammond, Louisiana, where Pierce had left it when he had rented the Nissan truck. Pierce was ultimately found at a motel in Mobile, Alabama. Pierce had a loaded semi-automatic pistol and some shotgun shells in his pocket, and a knife. A search of the Nissan truck turned up a 12-gauge shotgun, four 12-gauge shells, and a notebook in which Pierce had written random thoughts about his marital situation, Meta, and the murder. He wrote the following: “I will not hurt Nita or any of the rest of you. I give you my word on it, Meta, you know what that means to me. Si [Upton] would still be alive if you had kept yours. Cheap shot, but true. Believe it or not I’m mourning Si too and I wish I could undo it.”
¶ 8. At trial, the forensic evidence showed that Upton died as a result of three buckshot wounds to his chest, which penetrated his heart and lungs. The forensic pathologist testified that the victim had been shot from seven to nine feet away, which produced a wound that caused him to die of massive blood loss. The pathologist said that based upon the angles of the buckshot trajectory in Upton’s body, the physical evidence was consistent with the shooter standing and the victim leaning back or reclining in a chair when he was shot. There were no defensive wounds on Upton’s body. The only thing amiss in the room was that a lamp was overturned. The shotgun pellets removed from Upton were identified at trial by a crime laboratory specialist as 10- to 12-gauge shots. As previously noted, the police recovered a 12-gauge shotgun and four shells from Pierce’s truck when he was arrested.
¶ 9. After receiving his Miranda rights, Pierce refused to give a statement because “he did not want to relive the situation again,” but he did tell the officers that he had a notebook in his truck. He also *1014 informed the officers “that if he had to do it over again, he would have been the last one he would have killed.”
ANALYSIS
¶ 10. Pierce’s sole argument on appeal is that the trial court erred in not allowing the jury to consider a heat-of-passion manslaughter instruction. The judge found no evidence to support such an instruction. We agree.
¶ 11. The standard of review for a claim that a defendant was entitled to a lesser-included-offense instruction is de novo, as this is a question of law. Anderson v. State, 79 So.3d 501, 505 (¶ 16) (Miss.2012) (citing Downs v. State, 962 So.2d 1255, 1258 (¶ 10) (Miss.2007)). A lesser-included-offense instruction should be granted unless the trial court, and ultimately the appellate court, can say:
[Tjaking the evidence in the light most favorable to the accused, and considering all reasonable inferences which may be drawn in favor of the accused from the evidence, ... no reasonable jury could find the defendant guilty of the lesser included offense and conversely not guilty of at least one essential element of the principal offense.
Graham v. State, 582 So.2d 1014, 1017 (Miss.1991) (quoting Gates v. State, 484 So.2d 1002, 1004 (Miss.1986)). However, “[t]he evidence must warrant an instruction on the lesser-included offense before it can be granted.” Id. (citing Stevens v. State, 458 So.2d 726, 731 (Miss.1984)).
¶ 12. Manslaughter is defined as “[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense.... ” Miss.Code Ann. § 97-3-35 (Rev.2006). The Mississippi Supreme Court has defined “heat of passion” as “passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.” Anderson, 79 So.3d at 506 (¶ 18) (quoting McCune v. State, 989 So.2d 310, 319 (¶15) (Miss.2008)). However, the supreme court has stated that “words alone and disagreements among people are not enough to invoke the passion required for this defense.” Phillips v. State, 794 So.2d 1034, 1037 (¶ 10) (Miss.2001). “[M]ere words, no matter how provocative, are insufficient to reduce an intentional and unjustifiable homicide from murder to manslaughter.” Anderson, 79 So.3d at 506 (¶ 18) (quoting Phillips, 794 So.2d at 1037 (¶ 10)).
¶ 13. Pierce claims that he was in the heat of passion after receiving a “Dear John” letter from his wife. He states he was despondent and suicidal when he arrived at the Upton home. His passion was heightened when he saw his wife’s belongings there, so he had “words” with his brother-in-law. Pierce contends that his mental state combined with the “words” he had with Upton amounted to the heat of passion necessary to allow the giving of a manslaughter instruction. We, however, disagree.
¶ 14. We fail to find evidence in the record to show Pierce shot Upton in the heat of passion. There is no evidence that Pierce’s passion or anger was suddenly aroused by provocation. What the evidence does show is that Silas was sitting in his lounge chair in his home when he was shot at close range by a shotgun. In a writing to his wife Meta in his notebook, Pierce said that Upton would still be alive if Meta had not mistreated him. He said that he wished he “could undo it” because “believe it or not he was mourning [Upton] too.”
¶ 15. The testimony on the subject of Pierce’s mental state was supplied by his *1015 little brother Gary’s characterization of his psyche derived from cell phone calls in which Pierce allegedly told him he was suicidal. The “Dear John” letter Pierce claimed provoked his “violent and uncontrollable rage” was only a statement Pierce made to Gary. No letter was introduced into evidence, and the fact of its existence was not proven. Further, the only proof that Upton did anything but sit in his lounge chair was again limited to Pierce’s phone conversations with Gary. Furthermore, even if there had been some evidence that Pierce and Upton had “words,” mere words or disagreements, no matter how provocative, are not enough to reduce murder to manslaughter. See Anderson, 79 So.3d at 506 (¶ 18).
¶ 16. It is well established that a judge may deny a jury instruction when there is not evidence to support it. Neese v. State, 993 So.2d 837, 851 (¶ 33) (Miss.Ct.App.2008) (citing Terry v. State, 718 So.2d 1115, 1125 (¶ 48) (Miss.1998)). Accordingly, we find no error in the trial court’s failure to give a heat-of-passion jury instruction, and affirm Pierce’s conviction and sentence.
1117. THE JUDGMENT OF THE CIRCUIT COURT OF JEFFERSON DAVIS COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ„ CONCUR. RUSSELL, J., DISSENTS WITH SEPARATE WRITTEN OPINION.