# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00977-COA

**MICHAEL LARUE ALEXANDER**                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                 **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/07/2022 |
| TRIAL JUDGE: | HON. LISA P. DODSON |
| COURT FROM WHICH APPEALED: | STONE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MICHAEL W. CROSBY |
| | TYLER HEFLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALEXANDRA LEBRON |
| DISTRICT ATTORNEY: | WILLIAM CROSBY PARKER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/06/2024 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     On July 16, 2020, a Stone County grand jury indicted Michael Alexander for the touching of a child for lustful purposes in violation of Mississippi Code Annotated section 97-5-23(1) (Supp. 2015). After a two-day jury trial, Alexander was found guilty. The circuit court sentenced him to serve fifteen years in the custody of the Mississippi Department of Corrections (MDOC). Additionally, Alexander was ordered to pay court costs and an assessment in the amount of $1,000 to be paid to the Mississippi Children's Trust Fund. The circuit court denied Alexander's motion for judgment notwithstanding the verdict or a new trial. Aggrieved, Alexander now appeals. After a review of the record, we find no error and

affirm Alexander's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2.     K.S.[1] lived with her grandfather, aunt, and younger sister in a mobile home in Brooklyn, Mississippi. Her grandfather Tom adopted K.S. while she was very young because her mother was struggling with a drug addiction, and her father was not in her life. Her aunt Michelle helped Tom raise K.S. and her sister.

¶3.     The land that their mobile home was located on was owned by Tom's close friend Michael Alexander. Alexander also owned farmland across the street from their mobile home, where he raised cows. He would often invite K.S. to help him feed his cows and do other outdoor activities such as hunting and fishing. He also would take her to baseball games to get her out of the house. On most occasions, it would just be the two of them.

¶4.     At some point when she was fourteen years old, Alexander began molesting K.S. The first time was when Alexander took K.S. to a baseball game. On the drive back home, Alexander pulled over on the side of the road, opened the door on K.S.'s side, put his hand underneath her shirt, and touched her breasts. K.S. testified that "he told me to not tell anybody or he would make us move off the farm or the land."

¶5.     On the second occasion, Alexander picked up K.S. to accompany him to a birthday party. They stopped at his house in Wiggins. They were the only two individuals in the house at the time. She testified that she sat down on the couch and waited while he went upstairs for something. When he came back downstairs, he kneeled in front of her, got

_____

[1] Initials are used to protect the victim's identity.

2

between her legs, and began touching her breasts and rubbing her inner thigh and vagina. Eventually, they left the house and stopped at Alexander's shop in Wiggins. Again, they were the only two individuals in his shop at the time. K.S. testified that she was standing by the door and watching TV when suddenly Alexander came up behind her and started rubbing on her breasts and inner thighs again.

¶6.     On another occasion, K.S. and Alexander were feeding cows and riding on his tractor in the field behind her trailer. There were no other houses in the area, and no one else was around at the time. K.S. recalled that Alexander instructed her to get off the tractor. She did not find this unusual because she normally gets off to unwrap hay. However, on this occasion, Alexander got off with her. She testified that he put his hands underneath her shirt and began rubbing her breasts. He also pulled down his pants and her pants and began rubbing her vagina.

¶7.     K.S. revealed that Alexander eventually took it a step further and had sexual intercourse with her at his home in Brooklyn, Mississippi. When recalling the incident, she testified:

> We was going to his new house that he just built, and we get there, and we're supposed to be just looking and looking at the new pond that they put in there. And we go over there and we look at the pond, and we see the fish, and then we walk inside, and he shows me everything in the house, and when we get upstairs, he starts to touch me again. And I told him to stop, and he told me no so that's whenever he took off my shirt, my pants, and my shoes and he started touching me, and he put it inside of me.

K.S. said that it was painful, and she told him to stop multiple times.

¶8.     On May 11, 2019, while K.S. was asleep, her aunt, Michelle, walked into her room

3

because she heard K.S.'s phone buzzing at a late hour. She checked the phone and saw that it was Alexander texting K.S. inappropriately. He was frequently engaging in "dirty talk" with her and asked if she was ready to start having sex. After sending most of these messages, he would advise her to delete them.

¶9. The record also reveals that Alexander had been having an affair with Michelle for two years. At trial, Michelle testified that Alexander provided financial assistance for her and her family, and in return, she gave him sexual favors. Michelle testified that Alexander made checks out to Tom so that Alexander's wife would not find out about their affair.

¶10. Michelle confronted Alexander twice about the inappropriate text messages. She recorded both conversations, which were introduced into evidence at trial. On the first recording, Alexander can be heard laughing and admitting that he had touched K.S.: "I felt so bad about it. It happened. I don't know why it happened and I knew it shouldn't have happened, but I didn't think at the time. I'm just human." At one point, Alexander mentioned their financial strife and said, "[W]ell I'll help y'all any way I can just like ever thing but we gotta squash this thing." At the end of the conversation, Alexander wrote Michelle a check for $6,000.

¶11. On June 3, 2019, Michelle took K.S. to the Pearl River Family Clinic. After talking with medical personnel, they advised her to go to law enforcement. On the following day, Michelle filed charges at the Perry County Sheriff's Department. On June 14, 2019, Michelle and K.S. met with Investigator Lee Cannon, and K.S. completed a written statement. He instructed them that they also needed to make a report in Stone County since

4

some of the incidents occurred there.

¶12. On September 10, 2019, Alexander was indicted in Perry County. The following day, Michelle and K.S. filed charges at the Stone County Sheriff's Department. On September 23, 2019, a forensic interview was conducted by Daniel Dooley with the Children's Advocacy Centers of Mississippi. Lieutenant Amanda Schonewitz, an investigator who specializes in child sex crimes, met with Dooley to discuss his findings. Lieutenant Schonewitz also met with K.S. and found out additional information that was not disclosed to Dooley in the initial interview. This prompted Lieutenant Schonewitz to schedule a second forensic interview where she would be present. During this interview, K.S. revealed that Alexander had not only touched her, but he also penetrated her on one occasion. On October 2, 2019, a sexual assault nurse examiner (SANE) conducted an exam on K.S. The results were normal and revealed that her hymen was still intact. When asked about this exam at trial, Lieutenant Schonewitz testified that in her experience, "that's not anything usual because a woman's hymen can repair itself on its own no matter if you were assaulted a week or two weeks ago. It can heal its own self."

¶13. Alexander's trial commenced on May 24, 2022. K.S., Michelle, and Lieutenant Schonewitz testified for the State. At the conclusion of the State's case-in-chief, Alexander moved for a directed verdict. The court denied this motion and advised Alexander of his right to testify, however, Alexander ultimately chose not to do so. His ninety-year-old mother, Barbara Rozier, was the only witness to testify in his behalf.

¶14. On May 25, 2022, the Stone County Circuit Court jury found Alexander guilty of

touching a child for lustful purposes, and he was sentenced to serve fifteen years in the custody of the MDOC. On July 18, 2022, Alexander filed a motion for judgment notwithstanding the verdict or a new trial. Alexander requested a hearing on the motion, but a hearing was never scheduled. The trial court never ruled on the motion, so, here, it was denied by operation of law. *See* MRCrP 25.3. Alexander filed his notice of appeal on September 16, 2022. The trial court entered an order setting a hearing for the motion on October 3, 2022. On October 18, 2022, the trial court entered an order denying the motion and held:

> [T]he Court and Parties agreed the Court did not have jurisdiction to hear the Defendant's Motion for Judgment Notwithstanding the Verdict, for Judgment of Acquittal, or in the Alternative, for a New Trial due to the Defendant filing a Notice of Appeal in this cause. However, in the event this was in error, the Parties agreed and requested the Court hear and consider the Defendant's Motion.

The appeal was not perfected until November 2022.

## DISCUSSION

¶15. Alexander raises four issues on appeal. First, Alexander argues that the prosecutor committed reversible error by making golden-rule arguments during closing arguments. Next, Alexander argues that the trial judge committed reversible error by failing to grant Alexander's for-cause challenge against a juror who, like K.S., was a victim of sexual abuse. Alexander also argues that the trial judge committed reversible error by refusing Alexander's lesser-included-offense jury instruction on simple assault. Finally, Alexander argues that he was denied a fair trial due to the cumulative errors.

### I. Prosecutorial Misconduct During Closing Arguments

6

¶16.    "The standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." *Moffett v. State*, 156 So. 3d 835, 857 (¶60) (Miss. 2014) (quoting *Sheppard v. State*, 777 So. 2d 659, 661 (¶7) (Miss. 2000)). Additionally, "[t]his Court reviews the propriety of closing arguments giving deference to the trial court's ruling, because the trial court is in the best position to determine if an alleged improper comment had a prejudicial effect; therefore, absent an abuse of that discretion, the trial court's ruling will stand." *Coleman v. State*, 289 So. 3d 1221, 1224 (¶8) (Miss. Ct. App. 2020) (quoting *Jones v. State*, 962 So. 2d 1263, 1275 (¶45) (Miss. 2007)).

¶17.    Alexander claims the prosecutor made several comments that constituted prosecutorial misconduct.  During closing arguments, the prosecutor remarked:

> Ladies and gentlemen, if any of you were accused of molesting a child and you didn't do it, do you know what your response would be, you would be standing at the top of this courthouse yelling at the top of your lungs, I didn't do it. But what was his response? I did it. It happened.

Alexander argues that this is an improper "golden-rule" argument and an improper reference to Alexander's decision to not testify, which is a violation of the Fifth Amendment of the United States Constitution. *See United States v. Cervantes*, 706 F.3d 603, 614 (5th Cir. 2013) ("A comment violates the Fifth Amendment if the language used 'was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify'" (quoting *United States v. Rocha*, 916 F. 2d 219, 232 (5th Cir. 1990))).   He claims that the golden rule argument was violated again when the

prosecution said:

> He brought up the fact that . . . [K.S.] did not talk about the sexual intercourse until three years after. Ladies and gentlemen, she's 18 years old. Do you think she wants to talk about those? It's uncomfortable for me to stand up here and talk about this, talk about a man rubbing a child's vagina and her breasts, sticking his penis in her vagina. As an adult it's uncomfortable for me. This is what I do every day. Can you imagine this little girl? She didn't want to talk about this.

¶18. Notably, the defense made no objection when the prosecution made these statements during closing arguments. Thus, Alexander is procedurally barred from asserting this argument on appeal. *Evans v. State*, 226 So. 3d 1, 31 (¶78) (Miss. 2017) (quoting *Williams v. State*, 684 So. 2d 1179, 1192 (Miss. 1996)). "Nevertheless, the [S]upreme [C]ourt recognizes that '[al]though the failure to object contemporaneously generally waives a claim of prosecutorial misconduct during closing argument, we will review such a claim if the prosecutor's statement was so inflammatory that the trial judge should have objected on his own motion.'" *Daniels v. State*, 348 So. 3d 1055, 1070 (¶65) (Miss. Ct. App. 2022) (quoting *Evans*, 226 So. 3d at 31 (¶78)). Here, the alleged misconduct was not so inflammatory to require a sua sponte objection from the court. The prosecutor was simply highlighting the fact that Alexander admitted to committing the offense on the recording. The jury heard so for themselves on the recording that was played during trial. The prosecutor's comment makes no reference to Alexander's decision to not testify. Furthermore, the court instructed the jury to not draw any conclusions from Alexander's choosing not to testify: "The jury must not consider the fact that the defendant did not testify as evidence against him and no inference of any kind may be drawn from the fact that the defendant did not testify in this

8

case." "The jury is presumed to follow the instructions given by the trial court. 'To presume otherwise would be to render the jury system inoperable.'" *Evans*, 226 So. 3d at 32 (¶83) (quoting *Pitchford v. State*, 45 So. 3d 216, 240 (¶96) (Miss. 2010)). Also, when the prosecutor made the statement about K.S. not wanting to speak about the abuse and asked the jury, "Can you imagine this little girl," he was rebutting the defense's argument that K.S. changed her story and waited three years to reveal that she was sexually assaulted.

¶19. Notwithstanding the procedural bar, Alexander's argument still fails on the merits. "'Golden rule' arguments, which ask the jury to put themselves in the place of one of the parties, are prohibited." *Batiste v. State*, 121 So. 3d 808, 863 (¶145) (Miss. 2013). Our Supreme Court has explained:

> It is the essence of our system of courts and laws that every party is entitled to a fair and impartial jury. It is a fundamental tenet of our system that a man may not judge his own case, for experience teaches that men are usually not impartial and fair when self interest is involved. Therefore, it is improper to permit an attorney to tell the jury to put themselves in the shoes of one of the parties or to apply the golden rule. Attorneys should not tell a jury, in effect, that the law authorizes it to depart from neutrality and to make its determination from the point of view of bias or personal interest.

*Id.* (quoting *Chisolm v. State*, 529 So. 2d 635, 639-40 (Miss. 1988)). However, "[w]hen such a statement is sufficiently insignificant in the overall context of the case, the result is harmless error." *McCoy v. State*, 147 So. 3d 333, 344 (¶26) (Miss. 2014). Here, the prosecutor's statements did rise to the level of golden-rule arguments; however, they were sufficiently insignificant to the overall context of the case. The evidence against Alexander was extremely incriminating. The disturbing text messages reveal that he was frequently engaging in sexually explicit conversations with K.S., and he continuously warned her to

9

delete their messages because he was aware he was committing a crime. He can be heard on the recordings laughing and admitting multiple times to inappropriately touching K.S. Furthermore, he tried multiple times to "pay off" her family to make the situation go away because he knew he had financial power over her family. K.S. even admitted during her testimony that she was scared to tell anyone what Alexander had done to her because she was scared that he was going to force her family to leave his property. It is highly unlikely that the jury would have decided this case differently if these improper comments were not made by the prosecution during closing arguments. Accordingly, we find no reversible error.

## II.     For-Cause Challenge to Juror 11

¶20.    Alexander's next contention is that the court abused its discretion by denying his for-cause challenge to Juror 11. He argues that Juror 11 should have been questioned further after she said that she could be impartial. "The standard of review of the decision to grant or deny a challenge for cause is abuse of discretion." *Magee v. State*, 912 So. 2d 1044, 1052 (¶41) (Miss. Ct. App. 2005) (citing *Sewell v. State*, 721 So. 2d 129, 134 (¶28) (Miss. 1998)).

¶21.    During voir dire, the prosecution asked the jury pool whether they, their family members, or close friends had been the victim of a sex crime. Juror 11 admitted that she was a victim of an unprosecuted sex crime that occurred when she was five or six years old. She was twenty-two years old at the time of this trial. The court inquired whether this would affect her ability to be fair and impartial, and she responded that it would not. Alexander challenged Juror 11 for cause, but the trial judge denied the challenge because it was not a recent incident, and "there was nothing at all about her answers or her demeanor that

indicated in any way that she could not be fair." Alexander later exercised one of his peremptory strikes on Juror 11, and no reversible error resulted.

¶22. To be clear, "[w]hether a potential juror can be fair and impartial is a judicial question reserved for the trial judge and will not be disturbed unless clearly wrong." *Patton v. State*, 248 So. 3d 763, 767 (¶30) (Miss. 2018) (citing *Archer v. State*, 986 So. 2d 951, 957 (¶23) (Miss. 2008)). "No general rule can be stated which would control every conceivable situation with respect to a juror's qualifications[; e]ach case must be decided on its own merits in light of the facts before the court." *Id*. (quoting *Walls v. State*, 371 So. 2d 411, 413 (Miss. 1979)). "[W]hen a prospective juror assures the court that, despite the circumstance that raises some question as to his qualification, this will not affect his verdict, this promise is entitled to considerable deference." *McCammon v. State*, 299 So. 3d 873, 896 (¶94) (Miss. Ct. App. 2020) (quoting *Scott v. Ball*, 595 So. 2d 848, 850 (Miss. 1992)). Here, the court did its due diligence by inquiring whether Juror 11 could be impartial. Juror 11 assured the court that she could set her experience aside and be fair. No further questioning was necessary. Furthermore, Juror 11 was ultimately excused after Alexander chose to exercise one of his peremptory strikes on her. Our Supreme Court has held that "no reversible error results when the trial court fails to sustain a challenge for cause, and the juror(s) at issue is ultimately excused with a peremptory challenge." *Sewell*, 721 So. 2d at 135 (¶28). Accordingly, this issue demonstrates no reversible error.

### III.   Simple Assault Jury Instruction

¶23.    Alexander argues that the court erred in refusing to give what he proposes was a

lesser-included-offense jury instruction on simple assault. "The standard of review for a claim that a defendant was entitled to a lesser-included-offense instruction is de novo, as this is a question of law." *Pierce v. State*, 107 So. 3d 1011, 1014 (¶11) (Miss. Ct. App. 2012).

¶24. "A defendant is entitled to jury instructions on his theory of the case whenever there is evidence that would support a jury's finding on that theory." *Thomas v. State*, 48 So. 3d 460, 469 (¶23) (Miss. 2010). "To be entitled to a lesser-included-offense instruction, a defendant must point to some evidence in the record from which a jury reasonably could find him not guilty of the crime with which he was charged and at the same time find him guilty of a lesser-included offense." *Gilmore v. State*, 119 So. 3d 278, 286 (¶13) (Miss. 2013).

¶25. Before offering the simple assault instruction, even Alexander correctly stated that simple assault is not a lesser-included offense of touching a child for a lustful purpose in Mississippi. *See Sheffield v. State*, 64 So. 3d 529, 533 (¶9) (Miss. Ct. App. 2011); *Ladnier v. State*, 878 So. 2d 926, 932 (¶¶21-25) (Miss. 2004); *Goodnite v. State*, 799 So. 2d 64, 68 (¶¶20-23) (Miss. 2001). Nevertheless, he contends that a reasonable jury could have found him guilty of recklessly causing bodily injury to K.S. because the inappropriate text messages they exchanged "caused her to be 'scared, confused, [and] worried,' and that the reason she does not like talking about it is 'because it hurts,' thereby providing the necessary testimony/evidence to support the injury component required by the Simple Assault statute." We are not persuaded by this argument. There is no evidence in the record to suggest that Alexander attempted to cause K.S. harm or injury. The text messages, while they did cause K.S. much emotional harm, were clearly intended for a lustful purpose. They were not sent

12

to cause K.S. bodily harm. Alexander texted K.S., "I wish I could get in your box," and, "I would love to suck your big t*ts and rub your p***y." K.S. testified that Alexander eventually did these things to her, and it was clear from the evidence that he did them to gratify his lust. More evidence shows Alexander did not attempt to cause bodily harm: the fact that Alexander told Michelle, "I would never ever do nothing to hurt [K.S.]." Here, there is no evidence to indicate that Alexander attempted to cause K.S. bodily harm or attempted to put her in fear of bodily harm.

¶26.   "A person is guilty of simple assault if he attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or attempts by physical menace to put another in fear of imminent serious bodily harm[.]" Miss. Code Ann. § 97-3-7(1)(a) (Supp. 2016) (numerals omitted). A person is guilty of fondling a child if that person is over the age of eighteen, the child was under the age of sixteen, and if the defendant touched the child with either his hands or another part of his body for the purpose of gratifying his lust. Miss. Code Ann. § 97-5-23 (Supp. 2015).

¶27.   "[F]ondling involves an offensive touching which denotes sexual gratification which, while emotionally uncomfortable, does not necessarily cause bodily injury." *Ladnier*, 878 So. 2d at 932 (¶24). As such, "the element of bodily injury or imminent fear of serious bodily harm is not necessarily included in the offense of fondling." *Sheffield*, 64 So. 3d at 532 (¶10).

¶28.   Again, simple assault is not a lesser-included offense of touching for the gratification

of lust. *See id.* at (¶9) ("[I]t must be impossible to commit the greater offense without at the same time committing the lesser included offense." (internal quotation mark omitted)). Still, Alexander maintains simple assault is a lesser nonincluded offense (i.e., a related offense usually with lesser punishment). The argument fails to show reversible error, though, because "[a] criminal defendant no longer has the unilateral right under Mississippi law to insist upon an instruction for lesser-related offenses [that] are not necessarily included in the charged offense(s), i.e., so-called lesser-nonincluded-offense instructions." *Hye v. State*, 162 So. 3d 750, 751 (¶2) (Miss. 2015). Even if simple assault were a lesser nonincluded offense of touching, there is no evidentiary basis to deem simple assault a lesser nonincluded offense here to warrant instructing the jury on it. *See id.* at 751, 754 (¶¶2, 8) (affirming refusal of instruction because of "no evidentiary basis" and explaining that a lesser nonincluded offense (also termed a "lesser-related offense" or "lesser offense") requires proof of an element not required for the greater crime). Thus, without an evidentiary basis, the court did not abuse its discretion by refusing the proposed instruction.

### IV. Cumulative Error

¶29. As a final argument, Alexander contends that reversal is required because he was denied a fair trial due to the cumulative errors that occurred during trial. "Regarding cumulative errors[,] this Court has held that individual errors may combine with other errors to constitute reversible error where the cumulative effect deprives the defendant of a fundamentally fair trial." *Smith v. State*, 371 So. 3d 783, 790 (¶22) (Miss. Ct. App. 2023) (citing *Ross v. State*, 954 So. 2d 968, 1018 (¶138) (Miss. 2007)). The "[r]elevant factors to

consider in evaluating a claim of cumulative error include whether the issue of innocence or guilt is close, the quantity and character of the error, and the gravity of the crime charged." *Ronk v. State*, 267 So. 3d 1239, 1289 (¶215) (Miss. 2019) (quoting *Ross*, 954 So. 2d at 1018 (¶138)).

¶30.    "The cumulative error doctrine stems from the doctrine of harmless error, codified under Mississippi Rule of Civil Procedure 61." *Ross*, 954 So. 2d at 1018 (¶138).  Under this doctrine, "one error, standing alone, may not warrant reversal, [but] reversal may be required if the errors, taken together, create such an atmosphere of bias, passion, and prejudice that they effectively deny the defendant a fundamentally fair trial."  *Smith*, 371 So. 3d at 795 (¶42)  (internal quotation mark omitted) (quoting *Dickerson v. State,* 175 So. 3d 8, 35 (¶86) (Miss. 2015)).   Here, there was one error regarding golden-rule arguments made by the prosecution; however, this error was harmless, as the statements were sufficiently insignificant to the overall context of the case.  "Because only a single error occurred, there are no errors that could combine with other errors to establish cumulative error." *Batiste*, 121 So. 3d at 873 (¶184).  Accordingly, this issue is without merit.

### CONCLUSION

¶31.    Based on our review of the record, Alexander's challenges to his conviction are not persuasive and lack merit.  The trial court did not abuse its discretion in not striking Juror 11, who was eventually struck by Alexander.  Additionally, the trial court did not abuse its discretion in refusing to allow Alexander to submit his proposed jury instructions on simple assault when there was no evidentiary basis in the record.  The golden-rule arguments made

15

by the prosecution during closing arguments were sufficiently insignificant to the overall context of the case and resulted in harmless error. Lastly, since there was one single error, it cannot be established that there was cumulative error warranting reversal. Accordingly, we affirm Alexander's conviction and sentence.

¶32. **AFFIRMED.**

**CARLTON, P.J., McDONALD AND McCARTY, JJ., CONCUR. BARNES, C.J., WILSON, P.J., AND EMFINGER, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. SMITH, J., NOT PARTICIPATING.**